_____

No. 23-50724

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

ROBERT MAYFIELD,
R.U.M. ENTERPRISES, INCORPORATED,

Plaintiffs – Appellants,

v.

UNITED STATES DEPARTMENT OF LABOR,
MARTIN WALSH, SECRETARY, U.S. DEPARTMENT OF LABOR,

Defendants – Appellees.

_____

On Appeal from the United States District Court
for the Western District of Texas, Austin
Robert L. Pitman, U.S. District Judge

_____

**PLAINTIFFS – APPELLANTS
RECORD EXCERPTS
VOLUME 1**

_____

LUKE A. WAKE
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Email: lwake@pacificlegal.org

FRANK GARRISON
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
Telephone: (916) 419-7111
Email: fgarrison@pacificlegal.org

*Counsel for Plaintiffs-Appellants*

# <u>TABLE OF CONTENTS</u>

**<u>Tab #</u>**                                                                                          **<u>ROA</u>**

1    Docket Sheet ........................................................................ ROA.1

2    Notice of Appeal ................................................................ ROA.969

3    Final Judgment .................................................................. ROA.968

4    Order .................................................................................. ROA.949

5    Certificate of Service

# Tab 1

APPEAL

# U.S. District Court [LIVE]
## Western District of Texas (Austin)
## CIVIL DOCKET FOR CASE #: 1:22-cv-00792-RP

| | |
|---|---|
| Mayfield et al v. U.S. Department of Labor et al | Date Filed: 08/08/2022 |
| Assigned to: Judge Robert Pitman | Date Terminated: 09/27/2023 |
| Case in other court: 5th Circuit, 23-50724 | Jury Demand: None |
| Cause: 05:702 Administrative Procedure Act | Nature of Suit: 899 Other Statutes: Administrative Procedures Act/Review or Appeal of Agency Decision |
| | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

**Robert Mayfield**     represented by     **Luke A. Wake**
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
916-419-7111
Fax: 916-419-7477
Email: LWake@pacificlegal.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erin E. Wilcox**
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
916-419-7111
Email: ewilcox@pacificlegal.org
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**R.U.M. Enterprises, Inc.**     represented by     **Luke A. Wake**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erin E. Wilcox**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**U.S. Department of Labor**     represented by     **Brian C. Rosen-Shaud**
DOJ-Civ

**23-50724.1**

Federal Programs Branch
1100 L Street
Rm. 12022
Washington, DC 20530
202-305-7667
Email: brian.c.rosen-shaud@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Martin Walsh**               represented by    **Brian C. Rosen-Shaud**
*in his official capacity as U.S. Secretary of*             (See above for address)
*Labor*                                        *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 08/09/2022 | 1 | COMPLAINT ( Filing fee $ 402 receipt number ATXWDC-16373323), filed by Robert Mayfield, R.U.M. Enterprises, Inc.. (Attachments: # 1 Civil Cover Sheet, # 2 Civil Cover Sheet, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I, # 12 Exhibit J, # 13 Exhibit K, # 14 Exhibit L, # 15 Exhibit M, # 16 Exhibit N, # 17 Exhibit O, # 18 Exhibit P, # 19 Exhibit Q, # 20 Exhibit R, # 21 Exhibit S, # 22 Exhibit T, # 23 Exhibit U, # 24 Exhibit V, # 25 Exhibit W)(Wilcox, Erin) (Entered: 08/09/2022) |
| 08/09/2022 | 2 | REQUEST FOR ISSUANCE OF SUMMONS by Robert Mayfield, R.U.M. Enterprises, Inc.. (Wilcox, Erin) (Entered: 08/09/2022) |
| 08/09/2022 | | Case assigned to Judge Robert Pitman. CM WILL NOW REFLECT THE JUDGE INITIALS AS PART OF THE CASE NUMBER. PLEASE APPEND THESE JUDGE INITIALS TO THE CASE NUMBER ON EACH DOCUMENT THAT YOU FILE IN THIS CASE. (rn) (Entered: 08/10/2022) |
| 08/09/2022 | | If ordered by the court, all referrals and consents in this case will be assigned to Magistrate Judge Hightower (rn) (Entered: 08/10/2022) |
| 08/10/2022 | 3 | MOTION to Appear Pro Hac Vice by Erin E. Wilcox *for Luke Wake* ( Filing fee $ 100 receipt number ATXWDC-16379656) by on behalf of Robert Mayfield, R.U.M. Enterprises, Inc.. (Wilcox, Erin) Modified on 8/15/2022 (jv2). (Entered: 08/10/2022) |
| 08/10/2022 | 4 | Summons Issued as to All Defendants. (rn) (Entered: 08/10/2022) |
| 08/15/2022 | 5 | ORDER GRANTING 3 Motion to Appear Pro Hac Vice for Attorney Luke Wake for Robert Mayfield and R.U.M. Enterprises, Inc. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Registration is managed by the PACER Service Center. Signed by Judge Robert Pitman. (jv2) (Entered: 08/15/2022) |
| 08/16/2022 | 6 | SUMMONS Returned Executed by Robert Mayfield, R.U.M. Enterprises, Inc.. U.S. Department of Labor served on 8/15/2022, answer due 10/14/2022; Martin Walsh served on 8/15/2022, answer due 10/14/2022. (Wake, Luke) (Entered: 08/16/2022) |

**23-50724.2**

| 08/16/2022 | 7 | SUMMONS Returned Executed by Robert Mayfield, R.U.M. Enterprises, Inc.. (Wake, Luke) (Entered: 08/16/2022) |
|---|---|---|
| 08/16/2022 | 8 | SUMMONS Returned Executed by Robert Mayfield, R.U.M. Enterprises, Inc.. (Wake, Luke) (Entered: 08/16/2022) |
| 09/26/2022 | 9 | MOTION to Appear Pro Hac Vice by Erin E. Wilcox *for John Kerkhoff* ( Filing fee $ 100 receipt number ATXWDC-16565636) by on behalf of Robert Mayfield, R.U.M. Enterprises, Inc.. (Wilcox, Erin) Modified on 9/26/2022 (jv2). (Entered: 09/26/2022) |
| 09/27/2022 | 10 | ORDER GRANTING 9 Motion to Appear Pro Hac Vice for Attorney John Kerkhoff for Robert Mayfield and for R.U.M. Enterprises, Inc. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Registration is managed by the PACER Service Center. Signed by Judge Robert Pitman. (jv2) (Entered: 09/27/2022) |
| 10/14/2022 | 11 | ANSWER to 1 Complaint,, . Attorney Brian C. Rosen-Shaud added to party U.S. Department of Labor(pty:dft), Attorney Brian C. Rosen-Shaud added to party Martin Walsh(pty:dft) by U.S. Department of Labor, Martin Walsh.(Rosen-Shaud, Brian) (Entered: 10/14/2022) |
| 10/14/2022 | | DEFICIENCY NOTICE: re 11 Answer to Complaint. **Your document is deficient because you did not include a Certificate of Service. When all parties and or attorneys are not registered to receive electronic notification is case, a certificate of service is required. Please file a Certificate of Service in pleading format stating the means of service employed on John Kerkhoff, co-counsel for Plaintiffs. Use the "Certificate of Service" event under the "Service of Process" menu and link it to the original document.** (jv2) (Entered: 10/14/2022) |
| 10/14/2022 | 12 | CERTIFICATE OF SERVICE by U.S. Department of Labor, Martin Walsh 11 Answer to Complaint, (Rosen-Shaud, Brian) (Entered: 10/14/2022) |
| 10/28/2022 | 13 | STIPULATION *JOINT STIPULATION* by Robert Mayfield, R.U.M. Enterprises, Inc.. (Wake, Luke) (Entered: 10/28/2022) |
| 10/28/2022 | 14 | NOTICE of Filing Certification of Administrative Record by U.S. Department of Labor, Martin Walsh (Attachments: # 1 Certification of Administrative Record)(Rosen-Shaud, Brian) (Entered: 10/28/2022) |
| 11/07/2022 | 15 | ORDER Setting Initial Pretrial Conference for 11/30/2022 09:20 AM before Judge Robert Pitman. Signed by Judge Robert Pitman. (bot2) (Entered: 11/07/2022) |
| 11/30/2022 | 16 | Minute Entry for proceedings held before Judge Robert Pitman: Initial Pretrial Conference held on 11/30/2022. Written order forthcoming. (Minute entry documents are not available electronically.) (Court Reporter Lily Reznik.)(jv2) (Entered: 11/30/2022) |
| 11/30/2022 | 17 | SCHEDULING ORDER (setting briefing schedule on the parties' motions for summary judgment). Signed by Judge Robert Pitman. (jv2) (Entered: 11/30/2022) |
| 01/11/2023 | 18 | MOTION for Leave to Exceed Page Limitation *on Plaintiffs' Motion for Summary Judgment* by Robert Mayfield, R.U.M. Enterprises, Inc.. (Attachments: # 1 Proposed Order Proposed Order)(Wilcox, Erin) (Entered: 01/11/2023) |

**23-50724.3**

| 01/12/2023 | | Text Order GRANTING 18 Motion for Leave to File Excess Pages entered by Judge Robert Pitman. For good cause shown, IT IS ORDERED that Plaintiffs' Motion for Summary Judgment shall not exceed 30 pages. (This is a text-only entry generated by the court. There is no document associated with this entry.) (lolc) (Entered: 01/12/2023) |
| 01/20/2023 | 19 | MOTION for Summary Judgment by Robert Mayfield, R.U.M. Enterprises, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Wake, Luke) (Entered: 01/20/2023) |
| 01/24/2023 | 20 | Proposed Order to 19 MOTION for Summary Judgment by Robert Mayfield, R.U.M. Enterprises, Inc.. (Wake, Luke) (Entered: 01/24/2023) |
| 02/06/2023 | 21 | Consent MOTION for Leave to Exceed Page Limitation by U.S. Department of Labor, Martin Walsh. (Attachments: # 1 Proposed Order)(Rosen-Shaud, Brian) (Entered: 02/06/2023) |
| 02/07/2023 | | Text Order GRANTING 21 Motion for Leave to File Excess Pages entered by Judge Robert Pitman. In light of the parties' agreement and for good cause shown, IT IS ORDERED that Defendants' response shall not exceed 30 pages. (This is a text-only entry generated by the court. There is no document associated with this entry.) (lolc) (Entered: 02/07/2023) |
| 02/10/2023 | 22 | MOTION for Summary Judgment *and Opposition to Plaintiffs' Motion for Summary Judgment* by U.S. Department of Labor, Martin Walsh. (Attachments: # 1 Proposed Order)(Rosen-Shaud, Brian) Modified on 2/10/2023 to create docket entry relationship to Plaintiffs' MSJ (jv2). (Entered: 02/10/2023) |
| 03/03/2023 | 23 | Response in Opposition to Motion, filed by Robert Mayfield, R.U.M. Enterprises, Inc., re 22 MOTION for Summary Judgment *and Opposition to Plaintiffs' Motion for Summary Judgment* filed by Defendant Martin Walsh, Defendant U.S. Department of Labor, 19 MOTION for Summary Judgment filed by Plaintiff R.U.M. Enterprises, Inc., Plaintiff Robert Mayfield (Wake, Luke) (Entered: 03/03/2023) |
| 03/24/2023 | 24 | REPLY to Response to Motion, filed by U.S. Department of Labor, Martin Walsh, re 22 MOTION for Summary Judgment *and Opposition to Plaintiffs' Motion for Summary Judgment* filed by Defendant Martin Walsh, Defendant U.S. Department of Labor (Rosen-Shaud, Brian) (Entered: 03/24/2023) |
| 03/31/2023 | 25 | APPENDIX by U.S. Department of Labor, Martin Walsh. (Attachments: # 1 Joint Appendix, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S, # 21 Exhibit T, # 22 Exhibit U, # 23 Exhibit V, # 24 Exhibit W, # 25 Exhibit X, # 26 Exhibit Y, # 27 Exhibit Z, # 28 Exhibit AA, # 29 Exhibit BB, # 30 Exhibit CC, # 31 Exhibit DD, # 32 Exhibit EE, # 33 Exhibit FF, # 34 Exhibit GG, # 35 Exhibit HH)(Rosen-Shaud, Brian) (Entered: 03/31/2023) |
| 08/14/2023 | 26 | MOTION to Withdraw as Attorney by Robert Mayfield, R.U.M. Enterprises, Inc.. (Wake, Luke) (Entered: 08/14/2023) |
| 08/16/2023 | | Text Order GRANTING 26 Motion to Withdraw as Attorney. entered by Judge Robert Pitman. In light of the lack of opposition and for good cause shown, IT IS ORDERED that John F. Kerkhoff is WITHDRAWN as counsel of record for Plaintiffs. (This is a text-only entry generated by the court. There is no document associated with this entry.) (lolc) (Entered: 08/16/2023) |

**23-50724.4**

| 08/30/2023 | 27 | NOTICE by U.S. Department of Labor, Martin Walsh (Rosen-Shaud, Brian) (Entered: 08/30/2023) |
| 09/20/2023 | 28 | ORDER GRANTING 22 Defendants' Motion for Summary Judgment and DENYING 19 Plaintiffs' Motion for Summary Judgment. Signed by Judge Robert Pitman. (jv2) (Entered: 09/21/2023) |
| 09/27/2023 | 29 | FINAL JUDGMENT. Signed by Judge Robert Pitman. (jv2) (Entered: 09/27/2023) |
| 10/10/2023 | 30 | Appeal of Final Judgment 29 by Robert Mayfield, R.U.M. Enterprises, Inc.. No filing fee submitted (Wake, Luke) (Entered: 10/10/2023) |
| 10/10/2023 | | NOTICE OF APPEAL following 30 Notice of Appeal (E-Filed) by Robert Mayfield, R.U.M. Enterprises, Inc. ($505 Filing Fee DUE). Per 5th Circuit rules, the appellant has 14 days, from the filing of the Notice of Appeal, to order the transcript. To order a transcript, the appellant should fill out a (Transcript Order) and follow the instructions set out on the form. This form is available in the Clerk's Office or by clicking the hyperlink above. (jv2) (Entered: 10/11/2023) |
| 10/11/2023 | 31 | Payment of USCA Appeal Fee received $ 505 receipt number ATXWDC-17975566 (Wake, Luke) (Entered: 10/11/2023) |
| 10/18/2023 | 32 | TRANSCRIPT REQUEST by Robert Mayfield, R.U.M. Enterprises, Inc. for dates of n/a. Proceedings Transcribed: n/a. Court Reporter: n/a.. (Wake, Luke) (Entered: 10/18/2023) |
| 11/09/2023 | | Certification of the Electronic Record on Appeal has been accepted by the 5th Circuit re Notice of Appeal. Attorneys are advised that they may now download the EROA from the Fifth Circuit CM/ECF site by following these instructions here (klw) (Entered: 11/09/2023) |

| **PACER Service Center** | | |
| --- | --- | --- |
| **Transaction Receipt** | | |
| 01/17/2024 18:12:13 | | |
| **PACER Login:** | LukeWakelwake | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:22-cv-00792-RP |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

**23-50724.5**

# Tab 2

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

|  |  |
|---|---|
| ROBERT MAYFIELD; and R.U.M. ENTERPRISES, INC., | Case No. 1:22-cv-00792-RP |
| Plaintiffs, | JUDGE ROBERT PITMAN |
| v. |  |
| U.S. DEPARTMENT OF LABOR and MARTIN WALSH, in his official capacity as U.S. Secretary of Labor, |  |
| Defendants. |  |

**NOTICE OF APPEAL TO THE FIFTH CIRCUIT COURT OF APPEALS FROM FINAL JUDGMENT AND ORDER OF THE WESTERN DISTRICT OF TEXAS DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS MOTION FOR SUMMARY JUDGMENT**

LUKE A. WAKE*
ERIN WILCOX (Cal. Bar No. 337427)
**PACIFIC LEGAL FOUNDATION**
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
Email: LWake@pacificlegal.org
Email: EWilcox@pacificlegal.org
*Pro hac vice*

23-50724.969

Notice is hereby given that Plaintiffs Robert Mayfield and R.U.M. Enterprises, Inc., in the above captioned case, hereby appeal to the United States Court of Appeals for the Fifth Circuit from the Final Judgment and Order granting Defendant's Motion for Summary Judgment and denying Plaintiffs' Motion for Summary Judgment entered in this action on September 27, 2023.

Date:  October 10, 2023

Respectfully submitted,

s/ Luke A. Wake
LUKE A. WAKE*
ERIN WILCOX (Cal. Bar No. 337427)
**PACIFIC LEGAL FOUNDATION**
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
Email: EWilcox@pacificlegal.org
Email: LWake@pacificlegal.org
*Pro hac vice*

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Texas by using the appellate CM/ECF system.

*/s/ Luke A. Wake*
LUKE A. WAKE

# Tab 3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

ROBERT MAYFIELD et al.,                    §
                                           §
            Plaintiff,                     §
                                           §
v.                                         §
                                           §
U.S. DEPARTMENT OF LABOR                    §               1:22-CV-792-RP
et al.,                                    §
                                           §
            Defendants.                    §
                                           §

## **FINAL JUDGMENT**

On September 20, 2023, the Court entered an order granting Defendants' motion for

summary judgment and denying Plaintiffs' motion for summary judgment. As nothing remains to

resolve, the Court renders Final Judgment pursuant to Federal Rule of Civil Procedure 58.

**IT IS ORDERED** that the case is **CLOSED**.

**IT IS FURTHER ORDERED** that each party bear its own costs.

**SIGNED** on September 27, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

# Tab 4

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ROBERT MAYFIELD and R.U.M. ENTERPRISES, INC. | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:22-cv-792-RP |
| U.S. DEPARTMENT OF LABOR and JULIE A. SU, *in her official capacity as Acting U.S. Secretary of Labor*, | § § § § § | |
| Defendants. | § | |

## ORDER

Before the Court are cross-motions for summary judgment filed by Plaintiffs Robert

Mayfield and R.U.M. Enterprises, Inc. (together, "Plaintiffs"), (Dkt.19), and Defendants U.S.

Department of Labor and Julie Su, in her official capacity as Acting U.S. Secretary of Labor

(together, "Defendants"), (Dkt. 22). Having considered the parties' arguments, the undisputed facts,

and the relevant law, the Court will grant Defendants' motion and deny Plaintiffs' motion.

## I.  BACKGROUND

The Fair Labor Standards Act of 1938 (FLSA), 52 Stat. 1060, as amended, 29 U.S.C. §§

201 *et seq.,* exempts "bona fide executive, administrative, or professional" employees from overtime

pay requirements. Through its implementing regulations, the Department of Labor ("Department")

has long utilized a minimum-salary test as one factor in determining an employee's exempt status

under this section. This case presents the question of whether this approach is authorized under the

statute, and, if so, whether the statute unconstitutionally delegates legislative powers to the executive

branch.

## A. Statutory & Regulatory Background

Congress enacted the FLSA in 1938 to protect employees "from the evil of overwork as well as underpay." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (internal quotation marks omitted). The act generally requires employers to pay their employees a federal minimum wage as well as overtime premium pay for hours above forty per workweek, *see* 29 U.S.C. §§ 206(a)(1), 207(a)(1), but it also exempts several types of employees from these requirements. Relevant to this action, the FLSA exempts from both minimum wage and overtime protection "any employee employed in a bona fide executive, administrative, or professional capacity . . . as such terms are defined and delimited from time to time by regulations of the Secretary" of Labor. 29 U.S.C. § 213(a)(1) (the "EAP Exemption"). The statute itself does not define these terms. Through its rulemaking process, the Department has long "defined and delimited" the EAP exemption by conditioning eligibility on satisfying a three-part test. First, the employee must perform primarily executive, administrative, or professional duties, as defined by the Department (the "duties test"). 29 C.F.R. §§ 541.100–541.304. Second, the employee must be paid on a salary (not hourly) basis (the "salary-basis test"). *Id.* §§ 541.600, 541.602. Third, the employee's salary must meet or exceed a minimum weekly amount, as set by the Department (the "salary-level test"). *Id.* § 541.600.

Since 1940, the Department has paired a duties test with a salary-level test. Historically, the Department has justified the use of a salary-level test by pointing to its effectiveness as a screen for an employee's actual duties. *See, e.g.*, Weiss Report[1] at 8 ("[T]he best single test of the employer's

---

[1] In 1940, 1949, and 1958, the Department published reports when it revised its Part 541 regulations, which implement the EAP Exemption. *See* Wage and Hour Division, U.S. Department of Labor, *Executive, Administrative, Professional . . . Outside Salesman Redefined: Report and Recommendations of the Presiding Officer [Harold Stein] at Hearings Preliminary to Redefinition* (Oct. 10, 1940) ("Stein Report"), Certification of the Administrative Record, ("AR") Doc. 11, ECF No. 14-1; Wage and Hour Division, United States Department of Labor, *Report and Recommendations on Proposed Revisions of Regulations, Part 541, Harry Weiss, Presiding Officer* (June 30, 1949) ("Weiss Report"), AR Doc. 12; Wage and Hour Division, United States Department of Labor, *Report*

good faith in attributing importance to the employee's services is the amount he pays for them."); Stein Report at 42 (similar).

Over time, the salary-level rules have periodically been adjusted both in amount and operation. The original 1938 regulations set the minimum salary level at $30 per week for executive and administrative employees. 3 Fed. Reg. 2518 (Oct. 20, 1938). Two years later, the Department issued a new rule retaining the $30 per week level for executive employees but setting a $50 per week level for administrative and professional employees. *See* 5 Fed. Reg. 4077 (Oct. 15, 1940); Stein Report at 1–2. In 1949, the Department developed a two-tiered structure in which employers could satisfy either a "long" test (combining a more rigorous duties test with a lower salary level) or a "short" test (combining a less rigorous duties test and a higher salary level). 14 Fed. Reg. 7705 (Dec. 24, 1949). The Department retained the "long" and "short" test structure for the next five decades, but it updated the applicable salary levels in 1958, 1963, 1970, and 1975.

In 2004, the Department replaced the two-tiered test structure with a single test, which paired a "standard" duties test with a "standard" salary-level test of $455 per week ($23,660 annually). *See* Fed. Reg. 22122, 22126 (Apr. 23, 2004). The 2004 Rule adopted a new methodology, which set the minimum salary level equal to the 20th percentile of earnings of full-time salaried workers in the lowest-wage Census Region (the South) and/or in the retail industry nationally. *Id.*

In 2016, the Department issued a new rule effectively doubling the 2004 salary-level test by raising it to the 40th percentile of earnings of full-time salaried workers in the lowest-wage Census Region (the South) and/or in the retail industry nationally. 81 Fed. Reg. 32391 (May 23, 2016) (the

---

*and Recommendations on Proposed Revision of Regulations, Part 541, Harry S. Kantor, Presiding Officer* (Mar. 3, 1958) ("Kantor Report"), AR Doc. 13.

3

"2016 Rule"). In nominal terms, this new methodology would have increased the salary level from
$455 to $913 per week ($53,972 annually). However, following a court challenge, the U.S. Court for
the Eastern District of Texas enjoined the Department from enforcing the 2016 Rule and later ruled
that the 2016 Rule's salary-level test exceeded the Department's statutory authority. *Nevada* v. *U.S.
Dep't of Labor,* 275 F. Supp. 3d 795 (E.D. Tex. 2017) (*Nevada II*).

### B. The 2019 Final Rule

On March 22, 2019, the Department published a notice of proposed rulemaking to again
revise the EAP Exemption regulations. 84 Fed. Reg. 10900 (Mar. 22, 2019). It issued its final rule on
September 27, 2019. 84 Fed. Reg. at 51230–31 (the "Final Rule"). The Final Rule maintains the
methodology used in the 2004 Rule—*i.e.*, setting the minimum salary level to match the 20th
percentile of earnings of full-time salaried workers in the South Census Region—but applies this
methodology to current earnings data. *Id.* at 51237. In nominal terms, the Final Rule sets a minimum
salary level of $684 per week ($35,568 annually). *Id.* at 51238; *see, e.g.*, 29 C.F.R. § 541.600.

In publishing the Final Rule, the Department acknowledged that the 2016 Rule had
"untethered the salary level test from its historic justification." *Id.* at 51242. In rejecting the 40th
percentile methodology, the Department explained that "the laudable goal of reducing
misclassification cannot overtake the statutory text, which grounds analysis of [EAP] exemption
status in the 'capacity' in which someone is employed—*i.e.*, the employees' duties." *Id.* at 51231,
51244. As with previous EAP Exemption rules, the Department claims that the inclusion of a salary
level test screens out employees who are not likely performing EAP duties. *Id.* at 51237 (stating that
employees "'who do not meet the salary test are generally also found not to meet the other
requirements of the regulations'") (quoting Kantor Report at 2-3, AR Doc. 13). The Final Rule
reiterates the Department's historical view that the salary-level test "prevent[s] the misclassification

4

by employers of obviously nonexempt employees" as exempt, and "furnish[s] a practical guide to [investigators] as well as to employers and employees in borderline cases." *Id.* (quoting Weiss Report at 8, AR Doc. 12). According to the Department, "[t]he salary level test's primary and modest purpose is to identify potentially exempt employees by screening out obviously nonexempt employees." *Id.* at 51238.

### C. This Action

Plaintiff Robert Mayfield is a small business owner. (*See* Decl. of Robert Mayfield, Dkt. 1-3, ("Mayfield Decl."), at ¶ 3). Through his company, Plaintiff R.U.M. Enterprises, Inc., Mayfield operates thirteen Dairy Queen franchises and a Wally's Burger Express in and around Austin, Texas. (*Id.* ¶ 4). Based on their job duties, his managers and assistant managers are considered "executive" employees under the Department's regulations. Mayfield opposes the Final Rule's inclusion of a salary-level test because it requires him to either pay his managers higher salaries than he would prefer, or else demote some of them into a non-exempt role. (*Id.* ¶¶ 15−30). He states that, if the Final Rule was vacated, he would reduce the salaries of his exempt managers so that more money would be available to them in the form of performance bonuses. (*Id.* ¶ 29.) Simply put, the Final Rule takes away Plaintiff's flexibility to adopt its preferred compensation structure by conditioning the availability of the EAP Exemption on a minimum salary level. (*Id.* ¶¶ 22−24, 29−30).

On August 9, 2022, Plaintiffs filed the instant action seeking to invalidate the Final Rule as unlawful based on its adoption of a salary-level test (29 C.F.R. § 541.600). They claim the Rule exceeds the Department's statutory authority because the EAP Exemption applies to employees performing EAP duties regardless of salary level. (Compl., Dkt. 1, at 14). Alternatively, Plaintiffs claim the EAP Exemption unconstitutionally vests legislative power in the Department in violation of the nondelegation doctrine. (*Id.* at 16). On these grounds, Plaintiffs seek a judgment declaring 29

5

C.F.R. § 541.600 as unlawful or unconstitutional; an order enjoining Defendants from enforcing it; and an order setting aside and vacating the salary level test as unlawful agency action under 5 U.S.C. § 706.

## II.  LEGAL STANDARD

Under the Administrative Procedure Act ("APA"), a court must set aside and vacate agency action if it is not in accordance with law, 5 U.S.C. § 706(2)(A), or contrary to any constitutional right, power, privilege, or immunity, *id.* § 706(2)(B). In such cases, "summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency's action is supported by the administrative record and consistent with the APA standard of review." *Am. Stewards of Liberty v. Dep't of the Interior*, 370 F. Supp. 3d 711, 723 (W.D. Tex. 2019) (alterations and quotation marks omitted). The Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). Here, there is no dispute as to any material fact, as the parties have stipulated that this case can be decided based on the administrative record. (Joint Stip., Dkt. 13, ¶¶ 2–6.)

## III.  DISCUSSION

### A.  The Department Has Statutory Authority to Promulgate the Final Rule

Although Plaintiffs seek to invalidate the current salary-level test as reflected in the Final Rule, they contend that *any* consideration of salary in determining eligibility under the EAP Exemption falls outside the Department's statutory authority.

At the outset, any challenge to the Department's general authority in this area is foreclosed by *Wirtz v. Mississippi Publishers Corp.*, 364 F.2d 603 (5th Cir. 1966). In *Wirtz*, the plaintiff similarly argued that the "minimum salary requirement is not a justifiable regulation under Section 13(a)(1) of

6

the Act because [it is] not rationally related to the determination of whether an employee is employed in a 'bona fide executive . . . capacity.'" *Id.* at 608. The Fifth Circuit disagreed. Observing that the FLSA "gives the Secretary broad latitude to 'define and delimit' the meaning of the term 'bona fide executive . . . capacity,'" the court rejected the argument "that the minimum salary requirement is arbitrary or capricious," and upheld the rule as being consistent with the statute. *Id.* (citation omitted). Every circuit court to consider the argument has agreed.[2] Plaintiff argues that *Wirtz* is irrelevant because it did not examine whether a salary-level rule "is precluded by the plain meaning of the statutory text," (Pls.' Mot., Dkt. 19, at 21), or conduct a "rigorous textual analysis" as now required by the *Chevron* framework, (Pls.' Reply, Dkt. 23, at 19). This is unconvincing. Although *Wirtz* pre-dated Chevron, its result was expressly based on fidelity to the statutory text. *See Wirtz*, 364 F.2d at 608 (holding that the salary-level test was "rationally related" to determining whether an employee is employed in a 'bona fide executive . . . capacity'"). Indeed, the binding nature of *Wirtz*'s holding was acknowledged as recently as 2016 when the Eastern District of Texas struck down the previous salary-test rule. *Nevada II*, 275 F. Supp. 3d at 806 (recognizing that "*Wirtz* is controlling . . . for the proposition that the Department has the authority to implement a salary-level test").

But even assuming *Wirtz* employed some other standard, the Department's authority to adopt a salary-level test passes muster under the more modern, two-step *Chevron* framework. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). The first step is to determine whether Congress has directly and unambiguously spoken to the precise question at issue. *Id.* at 842. If so, "that is the end of the matter; for the court, as well as the agency, must give effect to the

---

[2] *See Walling v. Yeakley*, 140 F.2d 830, 832–33 (10th Cir. 1944); *Fanelli v. U.S. Gypsum* Co., 141 F.2d 216, 218 (2d Cir. 1944); *Walling v. Morris*, 155 F.2d 832, 836 (6th Cir. 1946), vacated on other grounds, *Morris v. McComb*, 332 U.S. 422 (1947).

7

unambiguously expressed intent of Congress." *Id.* at 842–43. However, if Congress has not directly addressed the precise question at issue, then the Court must proceed to step-two and determine "whether the agency's interpretation is based on a permissible construction of the statute," and thus deserving of deference. *Id.* at 843. And, in cases where Congress has "explicitly left a gap for the agency to fill," the agency's regulation is "given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 843–844.

## 1. Chevron Step One

Section 213(a)(1) provides, in relevant part, that "any employee employed in a bona fide executive, administrative, or professional capacity . . . as such terms are defined and delimited from time to time by regulations of the Secretary" shall be exempt from minimum wage and overtime requirements. 29 U.S.C. § 213(a)(1). The relevant question is whether, in adopting Section 213(a), Congress unambiguously intended to permit or to prohibit the use of a salary-level test as a criterion for eligibility for the EAP Exemption. The parties agree the statute does not explicitly confer or prohibit any "salary level rulemaking power." (Pls.' Mot., Dkt. 19, at 17). Still, Plaintiffs argue that the law's plain text and structure unambiguously foreclose any use of a salary-level test. Citing to dictionary definitions, Plaintiffs focus on the public meaning of the terms "executive, administrative or professional" to argue that those terms demonstrate that Congress was focused on employees' duties—not their salaries. ((*Id.*) (citing *Nevada v. U.S. Dep't of Lab.*, 218 F. Supp. 3d 520, 528 (E.D. Tex. 2016) (*Nevada I*) (reciting dictionary definitions at the time of FLSA's passage)).[3] Likewise, they argue that the term "capacity" refers to one's placement in a specific "position, condition, character,

---

[3] At the time of the FLSA's passage, the Oxford English Dictionary defined "executive" to mean "[c]apable of performance; operative . . . [a]ctive in execution, energetic . . . [a]pt or skillful in execution." *The Oxford English Dictionary* (1st ed. 1933). "Administrative" was defined to mean "[p]ertaining to, or dealing with, the conduct or management of affairs; executive." *Id.* And "professional" meant "[e]ngaged in one of the learned or skilled professions." *Nevada I*, 218 F. Supp. 3d at 529 (quoting *Oxford Dictionary*, 1933 Edition).

or relation," which further underscores that Congress was focused on the employees' function, not their pay. (*Id.*) Thus, while the Department may "define" and "delimit" EAP *duties*, Plaintiffs claim that it "cannot impose requirements—like salary levels—[that are] foreign to the text." (*Id.* at 20).

In making the exemption available to "any employee employed in a bona fide executive, administrative, or professional capacity," it is clear that Congress intended to exempt a certain class of workers based primarily on the nature of their work duties. *Nevada I*, 218 F. Supp. 3d at 529. Indeed, the Department does not dispute Plaintiffs' contention that Congress's "paramount focus" was on duties. (Pls.' Mot., Dkt. 19, at 17). But this does not mean, as Plaintiffs argue, that the statute unambiguously *prohibits* the use of additional factors to aid in the identification of the employees Congress sought to exempt. Importantly, Plaintiffs' emphasis on the terms "executive, administrative, [and] professional" understates the significance of the qualifying terms Congress placed on that list. Of the ten exemptions delineated in Section 13(a) of the originally enacted FLSA, only the EAP Exemption included the qualifier "in a bona fide . . . capacity" for the class of employees to which the exclusion applies. As Plaintiff observes, the term "bona fide" means "[i]n good faith, with sincerity, genuinely." (Pls.' Mot., Dkt. 19, at 19–20). Just as not all purchasers are "bona fide purchasers," it follows that not all EAP employees are necessarily bona fide under the FLSA.

Aside from the statutory text, Plaintiffs also argue that the FLSA's structure implicitly denies any salary-level rulemaking authority. They argue that Congress "knew how to include a salary level" when it wanted, as shown by its inclusion of an express salary requirement for Section 213's baseball-player exemption. (*Id.* at 22); *see* 29 U.S.C. § 213(a)(19) (exempting baseball players if they are paid a salary greater than what they would earn if they were paid the minimum wage for 40 hours per week). As such, Plaintiffs argue that the Department's construction conflicts with the canon

9

*expressio unius. See Texas v. United States*, 809 F.3d 134, 182 (5th Cir. 2015), *as revised* (Nov. 25, 2015) ("to express or include one thing implies the exclusion of the other, or of the alternative"). This argument is unconvincing. For one, the baseball-player exemption was added in 1967, so it is unclear how its passage sheds light on Congress's intention in passing the EAP Exemption in 1938. In any case, it is not inconsistent for Congress to specifically define some FLSA exemptions by reference to certain trades while granting the Department more discretion to define other categories. None of Plaintiffs' structural arguments demonstrates that Congress clearly intended to prohibit the Department from using a salary-level test when defining and delimiting the EAP exemption. In sum, the Court finds that the FLSA is ambiguous with respect to this issue.

### 2. Chevron Step-Two

Plaintiffs argue that there is no need to engage in Chevron Step-Two because the text of Section 213(a)(1) and the structure of the FLSA are dispositive (Pls.' Resp., Dkt. 23, at 17). However, for the reasons above, this Court disagrees. Because Congress was silent as to whether the Department should adopt a salary test, the Court must determine "whether the agency's answer is based on a permissible construction of the [FLSA]." *Chevron*, 467 U.S. at 843. Importantly, by instructing the Department to define and delimit the terms "bona fide executive, administrative, or professional capacity," Congress explicitly left a gap for the agency to fill. Accordingly, the Court must give the Department's regulations implementing Section 213(a)(1) "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844.

The Final Rule's use of a salary-level test is not arbitrary or capricious. Although the Fifth Circuit did not perform a two-step *Chevron* analysis in *Wirtz*, it explicitly stated that it "cannot say that the minimum salary requirement is arbitrary or capricious." 364 F.2d at 608 (citing *Walling*, 140 F.2d 830). Indeed, the Fifth Circuit found the minimum salary requirement was rationally related to

the determination of whether an employee is employed in a bona fide executive capacity. *Id.* Even in striking down the 2016 Rule, the district court still noted that a salary-level test consistent with that of the 2004 Rule was acceptable: "The use of a minimum salary level in this manner is consistent with Congress's intent because salary serves as a defining characteristic when determining who, in good faith, performs actual executive, administrative, or professional capacity duties." *Nebraska II,* 275 F. Supp. 3d at 806. The Department has used minimum salary levels as part of its EAP Exemption determinations for over 75 years. 84 Fed. Reg at 51239. It has found that "a salary level is helpful to determine who is not an executive, administrative or professional employee because it is a helpful indicator of the capacity in which an employee is employed, especially among lower paid employees." *Id.* (internal citations omitted). Therefore, the Department's use of a salary-level test is not arbitrary or capricious.

Additionally, the Final Rule's employment of a salary-level test is not manifestly contrary to Section 213(a)(1). Plaintiffs argue that the text of Section 213(a)(1) clearly precludes the Department from using a salary-level test to determine whether an employee falls within the EAP Exemption. (Pls.' Resp., Dkt. 22, at 16). However, Section 213(a)(1) only tells the Department that its primary focus should be an employee's duties—not that it cannot or should not implement additional tests to refine its determinations. Considering a salary level alongside an employee's duties is not outright contrary to Section 213(a)(1). When striking down the 2016 Rule, the court in *Nevada II* held that "[n]othing in Section 213(a)(1) allows the Department to make salary *rather than* an employee's duties determinative of whether a 'bona fide executive, administrative, or professional capacity' employee should be exempt from overtime pay." 275 F. Supp. 3d at 807 (emphasis added). However, this Court finds that the Final Rule calls for salary level to be considered *in addition to* employee duties, not in place of them. The Department's use of a salary-level test in the Final Rule is not manifestly

11

contrary to Section 213(a)(1) as the Department uses the salary-level test in conjunction with the duties analysis and salary-basis test to prevent misclassifications by employers and to guide employers in borderline cases. *See* 84 Fed. Reg. at 51237.

As the salary-level test of the Final Rule is not arbitrary, capricious, or manifestly contrary to Section 213(a)(1), the Court must give the Department controlling weight in deciding how to determine EAP exemptions.

### B. Canons of Construction Do Not Compel a Different Result

In addition to their textual and structural arguments, Plaintiffs argue that the Department's interpretation is foreclosed by several canons of statutory construction: the "federalism canon," (Pls.' Mot., Dkt. 19, at 24–25); the Constitutional avoidance canon, (*id.* at 25–27); and the major-questions doctrine, (*id.* at 27–29). None of the proposed limiting constructions raised by Plaintiffs compel the Court to adopt their interpretation of the statute.

#### 1. Federalism Canon

The federalism canon instructs courts against presuming that Congress would intend to alter state law rules unless it says so in "unmistakably clear" terms. *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). According to Plaintiffs, in passing the FLSA, Congress "made no clear decision to displace state law concerning compensation level requirements for exempt EAP employees." (Pls.' Mot., Dkt. 19, at 24). Accordingly, "respect for federalism requires a narrowing construction to preserve Mayfield's right to run his business as he deems fit on this issue, consistent with Texas law." (*Id.*) This argument lacks merit. For one, it is circular to refer to pre-existing state law that "concern[s] compensation level requirements for exempt EAP employees" because the contours of the EAP Exemption are creations of federal law. And Plaintiffs acknowledge that Congress "chose to displace state law" to the extent it conflicts with the FLSA's minimum-wage and overtime requirements. (*Id.*).

In any event, the Final Rule's salary level test is not a "compensation level requirement" per se because it does not *require* employers to pay employees a particular amount—it merely governs whether certain employees are excluded from FLSA protections.

### 2. Constitutional Avoidance Canon

Next, Plaintiffs argue "this Court should reject the Department's expansive interpretation of its power to 'define and delimit' the EAP Exemption because it would test the bounds of Congress' power to lawfully delegate rulemaking authority." (*Id.* at 25). Federal courts must prefer a plausible reading of a statute that avoids "serious doubt of constitutionality." *See Crowell v. Benson*, 285 U.S. 22, 62 (1932). But, as noted above, the Court finds Plaintiffs' reading—i.e., that the FLSA "unambiguously . . . preclude[s] the Department's interpretation" (Pls.' Reply, Dkt. 23, at 17)—to be implausible. Courts "cannot press statutory construction to the point of disingenuous evasion even to avoid a constitutional question." *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 57 n.9 (1996).

### 3. Major Questions Doctrine

Finally, Plaintiffs argue that the Court can "avoid a non-delegation issue" by applying the major questions doctrine (Pls.' Mot., Dkt. 19, at 27), which requires courts to reject claims that Congress conferred regulatory authority on subjects of "vast economic and political significance" in the absence of a clear statement, *West Virginia v. EPA*, 142 S. Ct. 2587 (2022). But the major questions doctrine applies only to "extraordinary cases . . . in which the history and the breadth of the authority that [the agency] has asserted, and the economic and political significance of that assertion, provide a reason to hesitate before concluding that Congress meant to confer such authority." *Id.* at 2608 (internal citations omitted). While it is not clear exactly when a case is one of "vast economic and political significance," this case certainly is not of such significance under Supreme Court or Fifth Circuit precedent. In *West Virginia,* the Court applied the major questions

13

doctrine in addressing EPA action that was expected to reduce GDP by at least $1 trillion by 2040. *See id.* at 2604. In *Ala. Ass's of Realtors v. HHS,* 141 S. Ct. 2485, 2489 (2021), the Court applied the major questions doctrine in addressing CDC action that was expected to have an economic impact of around $50 billion. Similarly, the Fifth Circuit applied the doctrine in addressing OSHA action that "impose[d] nearly $3 billion in compliance costs." *BST Holdings, L.L.C. v. Occupational Safety & Health Admin., United States Dep't of Lab.*, 17 F.4th 604, 617 (5th Cir. 2021). Here, the Department estimates that employers will pay $173.3 million in direct costs for the first 10 years after the Final Rule's effective date. 84 Fed. Reg. at 51254–51255. These costs to the employer include "regulatory familiarization costs," "adjustment costs," and "managerial costs." *Id.* The Final Rule additionally affects how much money is transferred from employer to employee. The Department estimates that annualized "transfers" will be $298.8 million for the first ten years, and the majority of these transfers will be attributable to the FLSA's overtime provision rather than salary increases for affected EAP workers who must be paid more to sustain their exempt status. *Id.* at 51255. These costs do not push this agency action to the previously recognized levels of "vast economic and political significance" that have triggered the major questions doctrine.

Aside from the stark contrast in economic effects, the Department's implementation of a salary-level test in the Final Rule does not seek to regulate "vast swaths of American life." *West Virgina,* 142 S. Ct.. at 2621. When the Final Rule took effect in 2020, 1.2 million employees who were exempt from overtime and minimum wage protections under the 2004 Rule became nonexempt and subject to the protections. 84 Fed. Reg. at 51238. Plaintiffs correctly point out that this means 1.2 million workers who may perform EAP duties would not be exempt from worker protections, but this is a small fraction of the 139.4 million wage and salary workers who are subject to the Department's regulations and covered by the FLSA. *See id.* at 51256.

Moreover, the Final Rule is not a new approach—the Department has exercised its authority to adopt a salary-level test for over seven decades. Section 13(a)(1) thus is not a "previously little-used backwater" provision of the FLSA, *West Virgina,* 142 S. Ct.. at 2613, nor does the Rule purport to reflect the Department's "discovery" of a previously "unheralded power" in "a long extant statute." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014). Plaintiffs contend that the Department's "basic approach" to salary-level rules "changed dramatically in 2004, 2016, and 2019." (Pls. Resp., Dkt. 23, at 13). While the methodology used to establish a salary-level test has certainly changed and evolved over the years, it is an overstatement to refer to this as a dramatic change analogous to the EPA's "unprecedented" regulations that "effected a fundamental revision of the statue" in *West Virginia.* 142 S. Ct. at 2612. Thus, the salary-level rule does not trigger application of the major questions doctrine.

Even if the there is some argument to be made that the Final Rule's salary-level test does trigger the major questions doctrine, Congress has made a clear statement that confers upon the Department the authority to "define[] and delimit"[] the EAP Exemption from "time to time." 29 U.S.C. § 213(a)(1). And as established above, the salary-level test is well within that conferred authority. While "we would not expect the Department of Homeland Security to make trade or foreign policy" and "no one would consider generation shifting a 'tool' in OSHA's 'toolbox,'" *West Virgina*, 142 S. Ct. at 2613, we would surely expect the Department of Labor to regulate the labor force.

For the reasons above, the Court finds that Section 213(a) confers the Department authority to implement a salary-level test in defining and delimiting the EAP exemption, and that the 2019 Rule falls within that authority. Accordingly, the Court will grant summary judgment to Defendants on Count I.

15

## C.  Section 213(a)(1) Is Not an Unconstitutional Delegation of Power

Plaintiffs also argue that, if Section 213(a)(1) "empowers the Secretary to dictate salary level requirements," then the statute itself is an unconstitutional delegation of legislative authority "because the statute provides no direction as to whether (or how) the Secretary should develop salary level rules." (Pls.' Mot., Dkt. 19, at 9). The Court finds that Section 213(a)(1) is not an unconstitutional delegation of legislative authority.

A statutory delegation is constitutional "as long as Congress lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform." *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (internal citations omitted). Thus, the constitutional question is "whether Congress has supplied an intelligible principle to guide the delegee's use of discretion." *Id.* It is "constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of th[e] delegated authority." *Big Time Vapes, Inc. v. Food & Drug Admin.*, 963 F.3d 436, 442 (5th Cir. 2020). These standards are not demanding. *Id.*

Courts have previously held that Section 213(a)(1) is a lawful delegation from Congress.[4] This Court agrees. Plaintiffs argue that the court cannot consider the Congress' "remedial" policy goals in creating the FLSA in determining whether there is an intelligible principle. (Pls.' Mot., Dkt. 19, at 35). However, "when evaluating whether Congress laid down a sufficiently intelligible

---

[4] "We think there can be no question that the power was lawfully delegated. Congress, in effect, provided that employees should be exempt who fell within certain general classifications as rationally and reasonably defined and made certain by the Administrator." *Walling,* 140 F.2d at 832. "Section 13(a) explicitly authorizes the Administrator to 'define and delimit,' by regulations, the terms used in that section. . . . In conferring such authority upon the Administrator, Congress acted in accordance with a long established tradition (frequently sanctioned by the Supreme Court), and did not unconstitutionally delegate powers vested in the legislative branch." *Fanelli*, 141 F.2d at 218.

16

principle, we're meant . . . to consider the purpose of the [FLSA], its factual background, and the statutory context." *Big Time Vapes,* 963 F.3d at 443. Congress included a general policy of "correct[ing] and . . . eliminat[ing]" the "existence . . . of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers" within the text of the FLSA. 29 U.S.C. § 202. Further, in *Walling*, the Tenth Circuit held that in creating the EAP Exemption itself, Congress "manifest a policy of having specific criteria laid down by the [Department] by which employer and enforcement agency could determine with certainty whether an employee fell within or without one of the exempted employments." 140 F.2d 830. Between the express goal of protecting the labor force and the history and purpose of Section 213(a) to exempt "executive, administrative, [and] professional" employees from certain protections, the Department is by no means left without guidance as to how to "define[] and delimit[]" those terms. 29 USC § 213(a)(1).

Additionally, Congress established boundaries for the Department's discretion in defining the terms "bona fide administrative, executive, or professional capacity" in the text of Section 213(a)(1). The statutory language itself is an intelligible principle that guides the Department in its rulemaking and limits its discretion. Even the Department acknowledges that it is prevented from *only* using a salary-level test because it does not fully account for the capacity in which an employee is employed. (Defs.' Mot., Dkt. 22, at 34 (citing 84 Fed. Reg. at 51239)). Plaintiffs argue that Section 213(a)(1) violates the nondelegation doctrine because Congress provided "no criteria to guide the Secretary's discretion." (Pls.' Mot., Dkt, 19, at 32). They compare this case to a recent Fifth Circuit decision finding that Congress' grant of authority to the SEC to decide whether to bring enforcement actions within the agency itself or in an Article III court is an unconstitutional delegation. *Jarkesy v. Sec. & Exch. Comm'n*, 34 F.4th 446, 462 (5th Cir. 2022), *cert. granted,* 143 S. Ct.

2688 (2023), and *cert. denied*, 143 S. Ct. 2690 (2023). But the statutory language of Section 213(a)(1)—even divorced from the policy of the FLSA and the purpose of Section 213(a)—is easily distinguishable from the "total absence of guidance" that the Fifth Circuit pointed to in *Jarkesy*. *Id.* In *Jarkesy*, the SEC had "exclusive authority and absolute discretion" in deciding where to bring enforcement actions. Likewise, in *Panama Ref. Co. v. Ryan*, 293 U.S. 388, 430 (1935), the Supreme Court noted that Congress "declared no policy," "established no standard," and "laid down no rule" before finding that Section 9(c) of the National Industrial Recovery Act was unconstitutional under the nondelegation doctrine.[5] That is not the case here where Congress' intentions for the Department's discretionary definitions are clear.

Finally, Plaintiffs repeatedly point out that Congress does not speak specifically to the conditions under which the Department should "impose, modify, or withdraw[] salary level rules," (Pls.' Mot., Dkt. 19, at 32), but to require Congress to set such specific parameters when delegating authority would go far beyond what the Supreme Court has previously required.[6] It is sufficient that Congress guides the Department's discretion in defining the terms by telling it that those employed

---

[5] The Supreme Court has only found two delegations from Congress to be unconstitutional. *Panama Refining* being the first, and *A.L.A. Schechter Poultry Corp. v. U.S.*, 295 U.S. 495, 542 (1935) (where the Court held that Section 3 of the Recovery Act gave the President "virtually unfettered" discretion in essentially "enacting laws for the government of trade and industry throughout the country"), being the second.

[6] The Supreme Court has upheld statutes authorizing the Secretary of War to determine and recover "excessive profits" from military contractors, *Lichter v. United States*, 334 U.S. 742, 785–86 (1948) (quotation marks omitted); authorizing the Price Administrator to fix "fair and equitable" commodities prices, *Yakus v. United States*, 321 U.S. 414, 420 (1944) (quotation marks omitted); authorizing the Federal Communications Commission to regulate broadcast licensing as "public interest, convenience, or necessity" requires, *National Broadcasting Co. v. United States*, 319 U.S. 190, 225–26 (1943) (quotation marks omitted); authorizing the Securities and Exchange Commission to ensure that a holding company's structure does not "unfairly or inequitably distribute voting power among security holders," *American Power & Light*, 329 U.S. at 104–05; directing the Sentencing Commission to promulgate then-binding Sentencing Guidelines for federal crimes, *Mistretta*, 488 U.S. at 374–77; and directing the Environmental Protection Agency to set nationwide air-quality standards limiting pollution to the level required to "protect the public health," *American Trucking*, 531 U.S. at 472 (quotation marks omitted).

in a "bona fide executive, administrative, or professional capacity" are exempt from protections designed for vulnerable low-level workers.

For the reasons above, the Court finds that Congress laid down an intelligible principle when conferring authority on the Department through Section 213(a)(1). Therefore, Section 213(a)(1) does not violate the nondelegation doctrine. Accordingly, the Court will grant Summary Judgment to Defendants on Count II.

## IV.   CONCLUSION

For these reasons, **IT IS ORDERED** that Defendants' motion for summary judgment, (Dkt. 22), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for summary judgment, (Dkt. 19), is **DENIED**.

**SIGNED** on September 20, 2023.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

23-50724.967

# Tab 5

# CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

_____/s/ Luke A. Wake_____
LUKE A. WAKE

*Counsel for Plaintiffs-Appellants*