No. 23-50724

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

ROBERT MAYFIELD; R.U.M. ENTERPRISES, INCORPORATED,

Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT OF LABOR; MARTIN WALSH,
SECRETARY, U.S. DEPARTMENT OF LABOR,

Defendants-Appellees.

On Appeal from the United States District Court
for the Western District of Texas

BRIEF FOR APPELLEES

*Of Counsel:*

SEEMA NANDA
*Solicitor of Labor*

JENNIFER S. BRAND
*Associate Solicitor*

RACHEL GOLDBERG
*Counsel for Appellate Litigation*

STEVEN W. GARDINER
*Senior Attorney*

BRIAN M. BOYNTON
 *Principal Deputy Assistant
 Attorney General*

JAMIE ESPARZA
 *United States Attorney*

ALISA B. KLEIN
COURTNEY L. DIXON
 *Attorneys, Appellate Staff
 Civil Division, Room 7246
 U.S. Department of Justice
 950 Pennsylvania Avenue NW
 Washington, DC 20530
 (202) 353-8189*

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required because defendants-appellees are all governmental parties.  5th Cir. R. 28.2.1

## STATEMENT REGARDING ORAL ARGUMENT

For more than 80 years, Department of Labor (Department) regulations implementing the Fair Labor Standards Act of 1938 have relied in part on an employee's salary level to identify those workers who fall within a statutory exemption for workers "employed in a bona fide executive, administrative, or professional capacity . . . (as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor] . . .)." 29 U.S.C. § 213(a)(1). Although the specific salary level used by the Department has changed over time, every administration has established or carried forward some salary-level test—a regulatory approach that this Court upheld in *Wirtz v. Mississippi Publishers Corp.*, 364 F.2d 603 (5th Cir. 1966), and that has received widespread support from industry as well as employee representatives.

Plaintiffs challenge the salary level that was set during the Trump Administration, alleging that there is no statutory authority for the Department to consider salary level in identifying workers subject to the exemption. The district court rejected that challenge, explaining that it is foreclosed by this Court's precedent and meritless in any event. The government does not believe that oral argument is necessary but stands ready to present argument if the Court would find it helpful.

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ................................................................1

STATEMENT OF THE ISSUES..................................................................1

STATEMENT OF THE CASE .................................................................. 2

    A.    Statutory and Regulatory Background......................................... 2

    B.    District Court Proceedings ...........................................................7

SUMMARY OF ARGUMENT ......................................................................10

STANDARD OF REVIEW ............................................................................12

ARGUMENT:
PLAINTIFFS PROVIDE NO BASIS TO OVERTURN
THE REGULATORY TEST THAT HAS BEEN USED
SINCE THE INCEPTION OF THE FLSA ...........................................13

    A.    Plaintiffs' Statutory-Authority Argument Is
        Foreclosed by Controlling Precedent and
        Meritless in Any Event ................................................................13

    B.    This Case Does Not Implicate the Major
        Questions Doctrine................................................................... 27

    C.    Plaintiffs' Nondelegation Argument Is
        Likewise Meritless ................................................................... 29

CONCLUSION .......................................................................... 33

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                                                    **Page(s)**

*Alabama Ass'n of Realtors v. Department of Health & Human Servs.*,
    141 S. Ct. 2485 (2021) ................................................................ 11-12

*A.L.A. Schechter Poultry Corp. v. United States*,
    295 U.S. 495 (1935) ......................................................................... 30

*Alstate Constr. Co. v. Durkin*,
    345 U.S. 13 (1953) ............................................................................ 22

*American Power & Light Co. v. SEC*,
    329 U.S. 90 (1946) .............................................................................31

*Auer v. Robbins*,
    519 U.S. 452 (1997) ........................................................................... 16

*Biden v. Nebraska*,
    600 U.S. 477 (2023) .................................................................... 27, 28

*Big Time Vapes, Inc. v. FDA*,
    963 F.3d 436 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2746 (2021) ....... 30

*Children's Hosp. Ass'n of Tex. v. Azar*,
    933 F.3d 764 (D.C. Cir. 2019) ......................................................... 19

*Commodity Futures Trading Comm'n v. Schor*,
    478 U.S. 833 (1986) .......................................................................... 23

*Easom v. US Well Servs., Inc.*,
    37 F.4th 238 (5th Cir. 2022) ............................................................ 15

*Fanelli v. U.S. Gypsum Co.*,
    141 F.2d 216 (2d Cir. 1944) ........................................ 4, 12, 14, 29, 32

*LeMaire v. Louisiana Dep't of Transp. & Dev.*,
    480 F.3d 383 (5th Cir. 2007) ............................................................ 12

*Long Island Care at Home, Ltd. v. Coke*,
    551 U.S. 158 (2007) ........................................ 15, 16, 18, 25, 32

*Mistretta v. United States*,
    488 U.S. 361 (1989) ................................................................... 30, 31

iv

*Nevada v. U.S. Dep't of Labor*:
  275 F. Supp. 3d 795 (E.D. Tex. 2017) ............................................... 6, 8, 15
  218 F. Supp. 3d 520 (E.D. Tex. 2016) ......................................................... 5

*Panama Refining Co. v. Ryan*,
  293 U.S. 388 (1935) .................................................................................. 30

*Prakash v. American Univ.*,
  727 F.2d 1174 (D.C. Cir. 1984) ............................................................. 4, 14

*United States v. Grimaud*,
  220 U.S. 506 (1911) .................................................................................. 30

*Walling v. Morris*,
  155 F.2d 832 (6th Cir. 1946), *vacated on other grounds sub nom.*
   *Morris v. McComb*, 332 U.S. 422 (1947) ....................................... 4-5, 14

*Walling v. Yeakley*,
  140 F.2d 830 (10th Cir. 1944) ................................................. 5, 14, 29, 32

*West Virginia v. EPA*,
  597 U.S. 697 (2022) ............................................................... 9, 11, 27, 28

*Whitman v. American Trucking Ass'ns*,
  531 U.S. 457 (2001) .......................................................................... 30, 31

*Wirtz v. Mississippi Publishers Corp.*,
  364 F.2d 603 (5th Cir. 1966) ................................... 1, 4, 7, 8, 11, 14, 18, 29

## Statutes:

Act of Nov. 15, 1990,
  Pub. L. No. 101-583, § 2, 104 Stat. 2871, 2871 ........................................ 23

Consolidated Appropriations Act, 2018,
  Pub. L. No. 115-141, div. S, tit. II, § 201, 132 Stat. 348, 1126.................... 26

Fair Labor Standards Act (FLSA):
  29 U.S.C. § 202(a) ................................................................................... 31
  29 U.S.C. § 206 ........................................................................................ 31
  29 U.S.C. § 206(a) ............................................................................... 2, 26
  29 U.S.C. § 207 ........................................................................................ 31
  29 U.S.C. § 207(a)(1) ................................................................................. 2

29 U.S.C. § 213(a)(1)  ............................... 1, 10, 13, 16, 18, 20, 21, 24, 25, 31

29 U.S.C. § 213(a)(5) ................................................................... 25

29 U.S.C. § 213(a)(15) ................................................................. 15

29 U.S.C. § 213(a)(19) ............................................................ 25, 26

Fair Labor Standards Amendments of 1949,
    Pub. L. No. 81-393, § 16(c), 63 Stat. 910, 920 .......................... 22

Fair Labor Standards Amendments of 1961,
    Pub. L. No. 87-30, sec. 9, § 13(a)-(b), 75 Stat. 65, 71-74 ......................... 23

Fair Labor Standards Amendments of 1966,
    Pub. L. No. 89-601, sec. 214, § 13(a)(1), 80 Stat. 830, 837 ..................... 23

Service Contract Act of 1965, amendments,
    Pub. L. No. 94-489, sec. 3, § 8(b), 90 Stat. 2358, 2358 (1976)
    (currently codified at 41 U.S.C. § 6701(3)(C)) .................................... 23-24

28 U.S.C. § 1291 ......................................................................... 1

28 U.S.C. § 1331 ......................................................................... 1

## Regulations:

29 C.F.R. pt. 541 ................................................................... 3, 13

29 C.F.R. § 778.113 .................................................................... 27

## Legislative Materials:

2 *Amendments to the Fair Labor Standards Act of 1938:*
    *Hearings on H.R. 2033 Before the H. Comm. on Educ & Labor*,
    81st Cong. 1063, 1071-72 (1949).............................................. 22

2 *Minimum Wage Standards and Other Parts of the Fair*
    *Labor Standards Act of 1938: Hearings on Proposed*
    *Amendments of the Fair Labor Standards Act of 1938*
    *Before Subcomm. No. 4 of the H. Comm. on Educ. & Labor*,
    80th Cong. 1019 (1947) .......................................................... 22

## Other Authorities:

*Bona fide*, 1 Oxford English Dictionary (1933 ed.) ..................................... 20

*Capacity*, 2 Oxford English Dictionary (1933 ed.)..................................... 20

3 Fed. Reg. 2518 (Oct. 20, 1938) ..............................................................3, 27

5 Fed. Reg. 4077 (Oct. 15, 1940)................................................................. 4

14 Fed. Reg. 7705 (Dec. 24, 1949) ............................................................. 4

23 Fed. Reg. 8962 (Nov. 18, 1958) ............................................................. 4

28 Fed. Reg. 9505 (Aug. 30, 1963) ............................................................. 4

32 Fed. Reg. 7823 (May 30, 1967) ............................................................ 25

35 Fed. Reg. 883 (Jan. 22, 1970) ............................................................... 4

40 Fed. Reg. 7091 (Feb. 19, 1975) ............................................................. 4

69 Fed. Reg. 22,122 (Apr. 23, 2004) ..................................................... 4, 32

81 Fed. Reg. 32,391 (May 23, 2016) .......................................................... 4

84 Fed. Reg. 51,230 (Sept. 27, 2019) ...................................... 6, 7, 8, 17, 20

88 Fed. Reg. 62,152 (Sept. 8, 2023) ......................................................... 10

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 1331.  The district court entered final judgment on September 27, 2023.  ROA.1732.  Plaintiffs filed a timely notice of appeal.  ROA.1734.  This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

The Fair Labor Standards Act of 1938 (FLSA or Act) exempts from the Act's minimum wage and overtime pay protections "any employee employed in a bona fide executive, administrative, or professional capacity . . . (as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor] . . .)."  29 U.S.C. § 213(a)(1).  Since 1938, the implementing regulations have relied in part on a salary-level test to identify workers who are "employed in a bona fide executive, administrative, or professional capacity."  *Id.*  The questions presented are:

1.  Whether the Department's longstanding approach, which this Court upheld in *Wirtz v. Mississippi Publishers Corp.*, 364 F.2d 603 (5th Cir. 1966), is within the Department's statutory authority; and

2. Whether Congress's delegation to the Department to define and delimit the terms of the statutory exemption for executive, administrative,

and professional employees is a lawful delegation of gap-filling authority, as every court of appeals to have considered the question has held.

## STATEMENT OF THE CASE

### A.    Statutory and Regulatory Background

The FLSA generally requires covered employers to pay employees a minimum hourly wage for all hours worked and overtime premium pay for hours of work exceeding 40 in a workweek.  29 U.S.C. §§ 206(a), 207(a)(1).  Among various other exemptions, Section 13(a)(1) of the Act excludes from these protections "any employee employed in a bona fide executive, administrative, or professional capacity . . . (as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor] . . .)."  *Id*. § 213(a)(1).  This exemption, which is commonly known as the EAP exemption, is premised on the understanding that individuals employed in a bona fide executive, administrative, or professional capacity typically earn salaries well above minimum wage and enjoy other privileges to compensate them for their long hours of work, setting them apart from nonexempt workers entitled to overtime pay.  *See* ROA.1460 (Report of the Minimum Wage Study Commission, vol. IV, at 240 (June 1981)); *see also, e.g*., ROA.1483 (Wage & Hour Div., U.S. Dep't of Labor, "*Executive, Administrative, Professional . . . , Outside Salesman" Redefined: Report*

2

*and Recommendations of the Presiding Officer [Harold Stein] at Hearings Preliminary to Redefinition* 19 (Oct. 10, 1940) (1940 Stein Report)).[1]

For more than 80 years, the regulations implementing the EAP exemption generally have required that an employee meet three criteria in order to be subject to the exemption and thus denied the protections of the FLSA: (1) the employee must perform primarily executive, administrative, or professional duties, as defined in the regulations (the "duties test"); (2) the employee must be paid on a salary basis (the "salary-basis test"); and (3) that salary must meet or exceed a minimum weekly amount, as specified in the regulations (the "salary-level test"). *See* 29 C.F.R. pt. 541.

The salary-level test is at issue here. Since the time the FLSA was enacted in 1938, every administration has maintained a salary-level test as a component of the EAP regulations, although the specific amount of the salary level and the methodology used to set it have varied over time. *See*, *e.g.*, 3 Fed. Reg. 2518 (Oct. 20, 1938) (establishing a $30 per week

---

[1] In 1940, 1949, and 1958, the Department published reports when it revised its regulations implementing the EAP exemption. *See* ROA.1461 (1940 Stein Report); ROA.1525 (Wage & Hour Div., U.S. Dep't of Labor, *Report and Recommendations on Proposed Revisions of Regulations, Part 541, Harry Weiss, Presiding Officer* (June 30, 1949) (1949 Weiss Report)); ROA.1562 (Wage & Hour Div., U.S. Dep't of Labor, *Report and Recommendations on Proposed Revision of Regulations, Part 541, Harry S. Kantor, Presiding Officer* (Mar. 3, 1958) (1958 Kantor Report)).

minimum compensation level for exempt executive and administrative employees); 5 Fed. Reg. 4077 (Oct. 15, 1940) (retaining $30 per week minimum salary level for exempt executive employees and establishing a $50 per week minimum salary level for exempt administrative and professional employees); 14 Fed. Reg. 7705 (Dec. 24, 1949) (adopting a two-tiered structure for assessing compliance with salary-level and duties tests); 23 Fed. Reg. 8962 (Nov. 18, 1958) (updating the salary level in light of contemporaneous wage data); 28 Fed. Reg. 9505 (Aug. 30, 1963) (same); 35 Fed. Reg. 883 (Jan. 22, 1970) (same); 40 Fed. Reg. 7091 (Feb. 19, 1975) (updating the salary level based on increases in the Consumer Price Index); 69 Fed. Reg. 22,122 (Apr. 23, 2004) (replacing two-tiered structure with single duties test and salary-level test); 81 Fed. Reg. 32,391 (May 23, 2016) (modifying the methodology used to determine the salary level).

Every court of appeals to address the issue—including this Court—has upheld the Department's authority to use a salary-level test as a component of the EAP regulations. *See Wirtz v. Mississippi Publishers Corp.*, 364 F.2d 603, 608 (5th Cir. 1966); *see also, e.g.*, *Prakash v. American Univ.*, 727 F.2d 1174, 1177-78 & 1178 n.19 (D.C. Cir. 1984); *Fanelli v. U.S. Gypsum Co.*, 141 F.2d 216, 218 (2d Cir. 1944); *Walling v. Morris*, 155 F.2d 832, 836 (6th

Cir. 1946), *vacated on other grounds sub nom. Morris v. McComb*, 332 U.S. 422 (1947); *Walling v. Yeakley*, 140 F.2d 830, 832-33 (10th Cir. 1944).

In 2016, the Department's authority for the salary-level test was briefly called into question by a district court's preliminary injunction ruling that enjoined the Department from implementing and enforcing the salary level set by a 2016 final rule. *See Nevada v. U.S. Dep't of Labor*, 218 F. Supp. 3d 520, 534 (E.D. Tex. 2016). While the Department's appeal of that preliminary injunction was pending, there was a change of presidential administration; the new administration urged this Court to reaffirm, as it had held in *Wirtz*, that the Department has statutory authority to use a salary-level test, though the Department asked the Court not to opine on the *specific* salary level that had been set by the prior administration in the 2016 rule. *See* Reply Brief for Appellants at 2-3, 17-18, *Nevada v. Dep't of Labor*, No. 16-41606 (5th Cir. June 30, 2017). The Department emphasized that its authority to use a salary-level test as one component of the criteria for the EAP exemption is well established and that industry groups including the Small Business Association and the National Restaurant Association supported an increase in the salary level from the 2004 rulemaking. *See id.* at 1, 3, 9. The Department asked this Court to "lift the

5

cloud created by the district court's broad reasoning, which would call into question *any* salary-level test adopted by the Department." *Id.* at 3.

That appeal was overtaken by events when the district court clarified in its summary judgment decision that it was not questioning the Department's authority for a salary-level test but was simply addressing the specific salary level set by the 2016 rule. The district court's summary judgment decision explicitly recognized that this Court's decision in "*Wirtz* is controlling and stands for the proposition that the Department has the authority to implement a salary-level test." *Nevada v. U.S. Dep't of Labor* (*Nevada II*), 275 F. Supp. 3d 795, 805 n.5 (E.D. Tex. 2017).

After further rulemaking, the Department published the 2019 final rule that is at issue here. *See* 84 Fed. Reg. 51,230 (Sept. 27, 2019). In the 2019 rule, the Department set the salary level using the same methodology as in its 2004 rule, applied to the most recent earnings data available at the time, which resulted in an increase of the 2004 salary level to $684 per week. *See id.* at 51,238. In issuing the 2019 rule, the Department reaffirmed that an employee's salary "is a helpful indicator of the capacity in which an employee is employed" and that, among other benefits, the use of a salary-level test as one component of the EAP exemption "prevent[s] . . . . misclassification by employers of obviously nonexempt employees, thus

6

tending to reduce litigation." *Id.* at 51,237 (quoting ROA.1536 (1949 Weiss Report 8)). The Department explained that it "has used such a test for over 75 years" and that its authority to do so "is well-established." *Id.* at 51,239 (citing *Wirtz*, 364 F.2d at 608, and other cases).

### B.    District Court Proceedings

Plaintiff Robert Mayfield operates fast food franchises in Texas through the company that he owns, plaintiff R.U.M. Enterprises. *See* ROA.10. The complaint challenged the 2019 rule discussed above. *See* ROA.21. Plaintiffs alleged that the Department does not have statutory authority to use a salary-level test as a component of the EAP regulations. ROA.21. Alternatively, plaintiffs alleged that, if the Department has statutory authority to use a salary-level test, the EAP exemption contravenes the nondelegation doctrine. *See* ROA.23.

The district court granted summary judgment for the Department. The court held that plaintiffs' statutory-authority claim is "foreclosed" by this Court's precedent. ROA.1718. The court explained that, in *Wirtz*, 364 F.2d 603, this Court rejected a challenge to the Department's salary-level test and expressly rejected the argument that the salary-level test "is not a justifiable regulation under Section 13(a)(1) of the Act because [it is] not rationally related to the determination of whether an employee is employed

in a 'bona fide executive . . . capacity.'" ROA.1718-19 (quoting *Wirtz*, 364 F.2d at 608). The district court explained that this holding is "binding" as to the question of whether the Department has authority to use a salary-level test, as the district court in the *Nevada* case likewise had recognized in its summary judgment decision. *See* ROA.1718-19 (citing *Nevada II*, 275 F. Supp. 3d at 806).

The district court further held that plaintiffs' statutory claim would fail on its own terms even if this Court's *Wirtz* decision were not controlling precedent. The district court explained that Congress expressly "instruct[ed] the Department to define and delimit the terms 'bona fide executive, administrative, or professional capacity,'" and thus "explicitly left a gap for the agency to fill." ROA.1722. The court noted that the Department has included a salary-level test "for over 75 years," and that the Department has found that "a salary level is helpful to determine who is not an executive, administrative or professional employee because it is a helpful indicator of the capacity in which an employee is employed." ROA.1723 (quoting 84 Fed. Reg. at 51,239). The district court explained that nothing in the FLSA's text or structure suggests the Department may not consider an employee's "salary level alongside an employee's duties" in determining whether the employee is employed in a "bona fide executive,

administrative, or professional capacity." ROA.1723 (quotation marks omitted). And the district court noted that every circuit that considered the issue has agreed that the Department has authority to use a salary-level test as a component of the EAP regulations. ROA.1719 (collecting cases).

The district court rejected plaintiffs' reliance on the major questions doctrine, which "applies only to 'extraordinary cases . . . in which the history and the breadth of the authority that [the agency] has asserted, and the economic and political significance of that assertion, provide a reason to hesitate before concluding that Congress meant to confer such authority." ROA.1725 (quoting *West Virginia v. EPA*, 597 U.S. 697, 721 (2022)). Here, the district court emphasized, Congress explicitly delegated authority to the Department to "define[] and delimit[] the EAP exemption," and "the Department has exercised its authority to adopt a salary-level test for over seven decades." *See* ROA.1725-27.

The district court likewise rejected plaintiffs' alternative claim that, if the Department has authority to consider salary level as one component of the criteria for the EAP exemption, the FLSA is an unconstitutional delegation of legislative authority to the Department. ROA.1728. The district court held, in agreement with every other court to have considered the question, that the Department's authority to define and delimit the

scope of the statutory exemption for EAP workers is meaningfully bounded by the text, history, and purpose of the exemption.  *See* ROA.1728-31.[2]

## SUMMARY OF ARGUMENT

Since 1938, Department of Labor regulations have relied on both a duties test and a salary-level test, working together, to identify employees who are subject to the FLSA's exemption for workers "employed in a bona fide executive, administrative, or professional capacity . . . as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor] . . .)."  29 U.S.C. § 213(a)(1).  The Department has long recognized that the terms of the exemption imply a status not attained by lower-wage workers and that salary level is a helpful indicator of whether an employee is employed in a bona fide executive, administrative, or professional capacity.  That longstanding approach has been supported by industry groups as well as employee representatives.

Plaintiffs assert that the Department's longstanding approach is unlawful because, they contend, the terms of the statutory exemption "have no connection to how much an employee is paid."  Pl. Br. 18.  The district

---

[2] In September 2023, the Department proposed to further update and modify the salary-level test.  *See* 88 Fed. Reg. 62,152 (Sept. 8, 2023) (notice of proposed rulemaking).  That rulemaking is ongoing.  Because plaintiffs contest the Department's authority to issue *any* salary-level test, issuance of the final rule will not moot this case.

court correctly held that that argument is foreclosed by this Court's decision in *Wirtz v. Mississippi Publishers Corp.*, 364 F.2d 603 (5th Cir. 1966), which explicitly rejected the contention that the Department's use of a salary-level test "is not a justifiable regulation" because salary level is "not rationally related to the determination of whether an employee is employed in a 'bona fide executive . . . capacity.'" *Id.* at 608. Plaintiffs provide no basis to disregard that controlling precedent, which is consistent with the holdings of every other court of appeals to have considered the issue.

Plaintiffs' statutory argument also would fail on its own terms, even if it were not foreclosed by Circuit precedent. The Department's longstanding determination that a person's salary is relevant to whether they are "employed in a bona fide executive, administrative, or professional capacity" is eminently reasonable and consistent with the very dictionary definitions on which plaintiffs rely. Furthermore, Congress has repeatedly ratified the Department's approach in amending the FLSA.

Plaintiffs' reliance on the major questions doctrine is wholly misplaced. That doctrine applies when an agency makes an "unprecedented" assertion of authority to regulate a matter of vast economic or political significance. *West Virginia v. EPA*, 597 U.S. 697, 721-22 (2022) (quoting *Alabama Ass'n of Realtors v. Department of Health &*

*Human Servs.*, 141 S. Ct. 2485, 2489 (2021) (per curiam)).  Here, the Department has used a salary-level test since the FLSA's inception in 1938. And the political and economic significance of the Department's rule revising and updating its salary-level test pale in comparison to the impact of the policies at issue in the Supreme Court's major-questions-doctrine cases.

Plaintiffs' alternative claim that the FLSA unconstitutionally delegates legislative power to the Department is equally meritless.  Every court of appeals to have considered the issue has agreed that Congress's delegation of gap-filling authority to the Department to define and delimit the scope of the EAP exemption falls "unmistakably within" the Supreme Court's nondelegation precedents.  *See, e.g.*, *Fanelli v. U.S. Gypsum Co.*, 141 F.2d 216, 218 (2d Cir. 1944).

## STANDARD OF REVIEW

This Court reviews de novo the district court's order granting summary judgment.  *See, e.g., LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 386 (5th Cir. 2007).

## ARGUMENT

## PLAINTIFFS PROVIDE NO BASIS TO OVERTURN THE REGULATORY TEST THAT HAS BEEN USED SINCE THE INCEPTION OF THE FLSA

### A.  Plaintiffs' Statutory-Authority Argument Is Foreclosed by Controlling Precedent and Meritless in Any Event

**1.**  The FLSA exempts from the Act's minimum wage and overtime pay requirements "any employee employed in a bona fide executive, administrative, or professional capacity."  29 U.S.C. § 213(a)(1).  The Act does not define what it means to be "employed in a bona fide executive, administrative, or professional capacity."  Instead, the Act provides that such terms should be "defined and delimited from time to time by regulations of the Secretary [of Labor]."  *Id.*

Since the inception of the FLSA, the Department's regulations implementing this exemption generally have required that, to come within the scope of this exemption and thus be denied the protections of the FLSA, an employee's salary must meet or exceed a specified minimum amount and the employee must have primarily executive, administrative, or professional duties, as defined by the Department.  *See* 29 C.F.R. pt. 541.  Although the specific minimum salary level has changed over time, every administration has established or carried forward a salary-level test in some form.

In *Wirtz v. Mississippi Publishers Corp.*, 364 F.2d 603 (5th Cir. 1966), this Court expressly rejected the argument that the Department's use of a "minimum salary requirement" in its EAP regulations is "not rationally related to the determination of whether an employee is employed in a 'bona fide executive . . . capacity.'" *Id.* at 608.  Writing for the Court, then-Judge Warren Burger (sitting by designation) reasoned that the FLSA "gives the Secretary broad latitude to 'define and delimit' the meaning of the term 'bona fide executive . . . capacity'" and rejected the argument that the Department's use of a "minimum salary requirement" in defining and delimiting the scope of the exception "is arbitrary or capricious." *Id.*  Every court of appeals to address the issue has likewise upheld the salary-level test as a component of the EAP regulations. *See*, *e.g.*, *Prakash v. American Univ.*, 727 F.2d 1174, 1177-78, 1178 & n.19 (D.C. Cir. 1984); *Fanelli v. U.S. Gypsum Co.*, 141 F.2d 216, 218 (2d Cir. 1944); *Walling v. Morris*, 155 F.2d 832, 836 (6th Cir. 1946), *vacated on other grounds sub nom. Morris v. McComb*, 332 U.S. 422 (1947); *Walling v. Yeakley*, 140 F.2d 830, 832-33 (10th Cir. 1944).

As the district court here held, and as the district court in *Nevada II* recognized in its summary judgment decision, "*Wirtz* is controlling and stands for the proposition that the Department has the authority to

14

implement a salary-level test." *Nevada II*, 275 F. Supp. 3d 795, 805 n.5 (E.D. Tex. 2017). Plaintiffs provide no basis to disregard that controlling circuit precedent, which plaintiffs neglect to discuss until page 41 of their brief. *See* Pl. Br. 41-42.

Plaintiffs wrongly assert that *Wirtz* applied an "arbitrary or capricious" standard that has no bearing on their statutory authority claim. Pl. Br. 41. On the contrary, where, as here, "Congress has explicitly left a gap for the agency to fill," the agency's implementing regulations must be upheld "unless they are arbitrary, capricious, or manifestly contrary to the statute." *Easom v. US Well Servs., Inc.*, 37 F.4th 238, 245 (5th Cir. 2022) (quotation marks omitted). Indeed, *Wirtz* correctly anticipated the reasoning of the unanimous Supreme Court in *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007), which addressed a parallel FLSA provision authorizing the Secretary to "define[] and delimit[]" the terms of an exemption for employees engaged in companionship services. *Id.* at 162 (quoting 29 U.S.C. § 213(a)(15)). The Supreme Court explained in *Coke* that, in directing the Secretary to define and delimit that exemption's terms, Congress had "explicitly le[ft] gaps" for the agency to fill and "expressly instruct[ed] the agency to work out the details of those broad definitions." *Id.* at 165, 167. The Supreme Court recognized that such gap-

15

filling measures may "turn upon the kind of thorough knowledge of the subject matter and ability to consult at length with affected parties that an agency, such as the [Department], possesses" and that when the Department "fills such a 'gap' reasonably, and in accordance with other applicable (*e.g.*, procedural) requirements, the courts accept the result as legally binding." *Id*. at 165, 167-68.

In developing the salary-level test through rulemakings, the Department has acted well within its authority to define and delimit the EAP exemption's terms and has relied on precisely the type of expertise, experience, and consultation with stakeholders that the Supreme Court in *Coke* envisioned. *See Coke*, 551 U.S. at 167-68; *accord Auer v. Robbins*, 519 U.S. 452, 456 (1997) ("The FLSA grants the Secretary broad authority to 'defin[e] and delimi[t]' the scope of the exemption for executive, administrative, and professional employees" (quoting 29 U.S.C. § 213(a)(1))). Plaintiffs assert that exempt EAP employees should be identified by reference to their job duties alone. *See* Pl. Br. 15. But the Department's first report on the EAP exemption in 1940 found "wide agreement" amongst employers and employees alike that the statutory language of the EAP exemption "implies a status" not attained by low-wage workers and that a salary-level test "is a valuable and easily applied index to

the 'bona fide' character of the employment for which exemption is claimed." ROA.1469, 1483 (1940 Stein Report 5, 19). In 1949, the Department similarly found after public hearings that the testimony of "both employers and employees supported the experience of the [Department] with respect to the usefulness and propriety of a salary test," emphasizing that a salary-level test "prevent[s] the misclassification by employers of obviously nonexempt employees" and "furnishe[s] a practical guide to [investigators] as well as to employers and employees in borderline cases." ROA.1536-37 (1949 Weiss Report 8-9).

That consensus has endured. As the Department's 2019 rule reaffirms, salary level is a "helpful indicator of the capacity in which an employee is employed," and "the vast majority of commenters" during the 2019 rulemaking, including employer representatives, supported an increase of the salary level from the level set by the 2004 rule. *See* 84 Fed. Reg. at 51,237, 51,238-39; *see also, e.g.*, *id.* at 51,239 (emphasizing that "[t]he vast majority of employer representatives supported the Department's" proposed salary level and citing comments from, for example, the National Association of Home Builders and the Small Business Legislative Council).

Plaintiffs are thus outliers in insisting that the terms of the EAP exemption "have no connection to how much an employee is paid."  Pl. Br. 18.  This Court correctly recognized in *Wirtz* that salary level is "rationally related to the determination of whether an employee is employed in a 'bona fide executive . . . capacity," 364 F.2d at 608, and that holding controls the disposition of this case.

**2. a.**  Plaintiffs' statutory authority argument would fail even if it were not foreclosed by this Court's decision in *Wirtz*.  Primarily relying on dictionary definitions, plaintiffs urge that the statutory terms "executive," "administrative," and "professional" "all relate to a person's performance, conduct, or function without suggesting salary."  Pl. Br. 17-19 (quotation marks omitted).  Plaintiffs assert that Section 13(a)(1) is therefore not "ambiguous" and does not "impl[y]" authority for the Department to use a salary-level test.  Pl. Br. 12-15.  That reasoning is doubly flawed.

First, plaintiffs' argument confuses an *implicit* delegation of authority to an agency to interpret ambiguous statutory terms with Congress's *explicit* delegation to the Department to "define[] and delimit[]" the EAP exemption's terms.  29 U.S.C. § 213(a)(1).  Because Section 13(a)(1)'s delegation is "express rather than implied," this Court has "no need to search for statutory ambiguity." *Children's Hosp. Ass'n of Tex. v. Azar*, 933

F.3d 764, 770 (D.C. Cir. 2019). Congress "*expressly* instruct[ed] the agency to work out the details of [its] broad definition," *Coke*, 551 U.S. at 165, 166-67 (emphasis added), and as a consequence, the Department's regulations must be "given controlling weight" where, as here, they are neither "arbitrary, capricious, [nor] manifestly contrary to the statute," *Children's Hosp. Ass'n of Tex.*, 933 F.3d at 770 (quotation marks omitted); *see supra* pp. 15-16.[3]

Second, plaintiffs' reliance on dictionary definitions fails on its own terms. As discussed above, *see supra* pp. 16-17, the Department has long understood the statutory phrase "bona fide executive, administrative, or professional capacity" to connote a status not attained by low-wage workers. *See* ROA.1469, 1483 (1940 Stein Report 5, 19); *see also, e.g.*, ROA.1483 (1940 Stein Report 19) ("The term 'executive' implies a certain prestige, status, and importance."); ROA.1564 (1958 Kantor Report 2) ("The terms bona fide executive, administrative and professional imply a

---

[3] For the same reason, plaintiffs are wrong in suggesting that the Supreme Court's decisions in *Loper Bright Enterprises v. Raimondo*, No. 22-451, and *Relentless, Inc. v. Department of Commerce*, No. 22-1219, will affect this case. Pl. Br. 12 n.7. The pending Supreme Court cases raise the question whether silence or ambiguity in a statute should be regarded as an *implicit* delegation of authority to an agency, which is not the issue here. See, e.g., Br. for Petitioners, *Relentless, Inc.*, No. 22-1219, 2023 WL 8237503, at *34 (U.S. Nov. 20, 2023) (objecting to the aspect of the *Chevron* doctrine that is based "on a theory of *implied* delegation").

certain prestige, status and importance."). That is fully consistent with plaintiffs' cited dictionary definitions of the exemption's individual terms. Pl. Br. 17-18. Indeed, as plaintiffs recognize (Br. 18), the definition of "capacity" includes "position, condition, character, relation." *Capacity*, 2 *Oxford English Dictionary* (1933 ed.). An employee's "position" in the workplace (*id.*) certainly involves the employee's work duties, but also is readily understood to include their pay. *See* 84 Fed. Reg. at 51,237 (salary is a "helpful indicator of the capacity in which an employee is employed"); ROA.1564 (1958 Kantor Report 2) ("[T]he employee's salary serves as one mark of his status in management or the professions.").

The Department's longstanding interpretation is reinforced by the statute's inclusion of the term "bona fide," 29 U.S.C. § 213(a)(1), which requires an employer's "good faith," "sincerity," or "genuine[ness]," *Bona fide*, 1 Oxford English Dictionary (1933 ed.); *see* ROA.1721 (emphasizing that Congress "included the qualifier 'in a bona fide . . . capacity' for the class of employees to which the exemption applies"). As explained above, the Department has long found that such "good faith" can be demonstrated through the salary an employer pays. ROA.1469, 1483 (1940 Stein Report 5, 19); *see also, e.g.*, ROA.1483 (1940 Stein Report 19) (salary level is "a valuable and easily applied index to the 'bona fide' character of the

employment for which exemption is claimed").  In this way, the salary-level test helps to ensure that the Section 13(a)(1) exemption does not "invite evasion" of the FLSA's minimum wage and overtime requirements "for large numbers of workers to whom the wage-and-hour provisions should apply."  ROA.1483 (Stein Report 19).  Plaintiffs' approach, by contrast, would permit employers to claim, for example, that a worker making the federal minimum wage (equivalent to just over $15,000 per year) is nonetheless "employed in a bona fide executive . . . capacity," 29 U.S.C. § 213(a)(1), and exempt from the FLSA's protections.  Plaintiffs provide no basis to overturn the over 80-year-old approach used by the agency charged with administering the FLSA.

   **b.**  Plaintiffs' statutory authority argument also disregards the fact that Congress has ratified the Department's use of a salary-level test as a component of the EAP regulations.  By 1949, the Department's regulations applying both a duties test and a salary-level test had been in place for over a decade and upheld by the courts.  *See supra* pp. 14, 16-17.  In the hearings preceding Congress's amendments to the FLSA that year, Congress received testimony concerning the salary-level test from business groups, employee

advocates, and the Department.[4]  When Congress amended the FLSA in 1949, it did not amend the language of the EAP exemption in Section 13(a)(1), and Congress specified that "[a]ny order, regulation, or interpretation of the" Department then in effect under the FLSA "shall remain in effect" unless inconsistent with the 1949 amendments.  *See* Fair Labor Standards Amendments of 1949, Pub. L. No. 81-393, § 16(c), 63 Stat. 910, 920; *see also Alstate Constr. Co. v. Durkin*, 345 U.S. 13, 17 (1953) (refusing to disturb "an administrative interpretation of the [FLSA] which Congress refused to repudiate" in the 1949 amendments).

Congress has amended the FLSA on many other occasions, including amending Section 13(a)(1) in particular to adjust the universe of executive,

---

[4] *See, e.g.*, 2 *Minimum Wage Standards and Other Parts of the Fair Labor Standards Act of 1938: Hearings on Proposed Amendments of the Fair Labor Standards Act of 1938 Before Subcomm. No. 4 of the H. Comm. on Educ. & Labor*, 80th Cong. 1019 (1947) (testimony of the Chamber of Commerce urging Congress to define for itself the terms "executive, administrative, and professional employees," including that Congress set the salary level itself); 2 *Amendments to the Fair Labor Standards Act of 1938: Hearings on H.R. 2033 Before the H. Comm. on Educ & Labor*, 81st Cong. 1063, 1071-72 (1949) (testimony of employee representative urging that Congress raise the salary level); 4 *Minimum Wage Standards and Other Parts of the Fair Labor Standards Act of 1938: Hearings on Proposed Amendments of the Fair Labor Standards Act of 1938 Before Subcomm. No. 4 of the H. Comm. on Educ. & Labor*, *supra*, at 2765 (testimony of Solicitor of Labor that "the Division's definition of an exempt executive employee also contains a salary test" and that this "was upheld by the Tenth Circuit Court of Appeals in *Walling v. Yeakley*").

administrative, and professional employees included within the scope of the EAP exemption.  *See, e.g.*, Fair Labor Standards Amendments of 1961, Pub. L. No. 87-30, sec. 9, § 13(a)-(b), 75 Stat. 65, 71-74 (amending the EAP exemption in light of Congress's expansion of FLSA coverage to retail employees); Fair Labor Standards Amendments of 1966, Pub. L. No. 89-601, sec. 214, § 13(a)(1), 80 Stat. 830, 837 (amending the EAP exemption to exempt academic administrative personnel and certain teachers); Act of Nov. 15, 1990, Pub. L. No. 101-583, § 2, 104 Stat. 2871, 2871 (amending the EAP exemption to instruct the Secretary to promulgate regulations exempting computer professionals).  None of these amendments has disturbed the Department's longstanding salary-level test.  The Supreme Court has emphasized that where, as here, Congress "revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress."  *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986) (quotation marks omitted).

Further underscoring Congress's ratification, Congress has expressly incorporated the Department's EAP regulations (and thus its salary-level test) into a separate statute relating to employee pay and benefits.  *See*

23

Service Contract Act of 1965, amendments, Pub. L. No. 94-489, sec. 3, § 8(b), 90 Stat. 2358, 2358 (1976) (currently codified at 41 U.S.C. § 6701(3)(C)) (defining "service employee" in Service Contract Act to exclude "any person employed in a bona fide executive, administrative, or professional capacity, as those terms are defined in part 541 of title 29, Code of Federal Regulations, as of July 30, 1976, and any subsequent revision of those regulations").

**c.** Plaintiffs' remaining arguments reflect their basic misunderstanding of the statute and Congress's delegation to the Department. Plaintiffs contend, for example, that their duties-only argument is supported by Congress's specification in Section 13(a)(1) that workers "employed in the capacity of academic administrative personnel or teacher in elementary or secondary schools" are included within the scope of the exemption. 29 U.S.C. § 213(a)(1). But Congress added that language to Section 13(a)(1) in 1966, at which time it was well-aware of the Department's salary-level test. *See supra* p. 23. Nothing about Congress's choice to enumerate those two occupations as included within the scope of the exemption precludes the Department from continuing to apply a salary-level test to a wide range of occupations to identify those workers employed in a "bona fide executive, administrative, or professional capacity." 29

24

U.S.C. § 213(a)(1). Indeed, even with respect to the statutory terms "academic administrative personnel" and "teacher[s]," Congress expressly delegated to the Department the authority to "define[] and delimit[]" those terms, *id.*, and thus expressly left a gap for the agency to fill, *see Coke*, 551 U.S. at 165. Since 1967, the Department's regulations have provided criteria specific to those occupations to identify exempt employees, including a salary-level test specific to academic administrative personnel. *See* 32 Fed. Reg. 7823, 7824 (May 30, 1967).

Plaintiffs' reliance on separate FLSA exemptions such as the exemption for certain fishermen, 29 U.S.C. § 213(a)(5), or for workers "employed to play baseball," *id.* § 213(a)(19), is even further afield. Plaintiffs urge that these separate exemptions focus on "specific trades" or occupations and "not on how much an employee is paid." Pl. Br. 21-22. But it is not inconsistent for Congress to specify certain specific trades and occupations as exempt from the Act, while separately exempting workers "employed in a bona fide executive, administrative, or professional capacity" and expressly delegating to the Department the authority to define and delimit those terms. 29 U.S.C. § 213(a)(1). The separate FLSA exemptions cited by plaintiffs use meaningfully different language than the EAP exemption and cast no doubt on the Department's authority to

consider salary level in identifying exempt EAP employees. *See* ROA.1721 (emphasizing, for example, that "only the EAP Exemption include[s] the qualifier 'in a bona fide . . . capacity' for the class of employees" included in the exemption).

Moreover, as plaintiffs recognize (Pl. Br. 22), Congress included a salary-level requirement in its baseball player exemption. *See* 29 U.S.C. § 213(a)(19). Plaintiffs contend that this demonstrates that Congress "knows how to include a salary level when it wants," Pl. Br. 22, but that ignores that Congress added the baseball player exemption to the FLSA in 2018—approximately 80 years after Congress enacted the EAP exemption and the Department first adopted a salary-level test for EAP employees. *See* Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, div. S, tit. II, § 201, 132 Stat. 348, 1126. If anything, the fact that Congress in 2018 included a salary-level test in exempting certain baseball players from the FLSA's minimum wage and overtime requirements underscores Congress's agreement that a salary-level test can be an appropriate tool in identifying exempt employees. *See supra* pp. 21-23.

Finally, plaintiffs are not aided by their observation that Congress spoke "in express terms" in the FLSA when it wanted to impose "compensation requirements" for employees, such as the federal minimum

wage.  Pl. Br. 23 (citing 29 U.S.C. § 206(a)).  The salary-level test is not a minimum compensation requirement that employers must pay employees; rather, as explained, the Department uses the salary-level test together with the salary-basis and duties tests to help distinguish those workers employed in a bona fide executive, administrative, or professional capacity from nonexempt employees, pursuant to Congress's express delegation to define and delimit the terms of the EAP exemption.[5]

## B.    This Case Does Not Implicate the Major Questions Doctrine

Plaintiffs' reliance on the major questions doctrine (Pl. Br. 26-41) turns that doctrine on its head.  The major questions doctrine applies when an agency makes an "unprecedented" assertion of authority to regulate a matter of vast economic or political significance.  *West Virginia v. EPA*, 597 U.S. 697, 716, 721, 728 (2022) (quotation marks omitted); *see also*, *e.g.*, *Biden v. Nebraska*, 600 U.S. 477, 501 (2023) (emphasizing that the Secretary had "never previously claimed powers of this magnitude" under the statute at issue).  Here, by contrast, the Department has used a salary-

---

[5] Plaintiffs likewise misunderstand the way the EAP exemption works when they suggest that if an employee is not exempt under the EAP regulations, that employee cannot be paid a salary and must instead be paid on an hourly basis.  Pl. Br. 8.  Employers are free to pay nonexempt workers a salary, and the Department's regulations explain how to compute overtime for salaried nonexempt employees.  *See, e.g.*, 29 C.F.R. § 778.113.

level test as a component of the EAP regulations since the FLSA's enactment in 1938. *See* 3 Fed. Reg. 2518. Courts have long upheld the Department's use of a salary-level test, and Congress has ratified the Department's approach. *See supra* pp. 14, 21-24.

Moreover, as the district court correctly recognized, the political and economic significance of the Department's regulations revising and updating its longstanding salary-level test pale in comparison to the impact of the policies at issue in the Supreme Court's major-questions-doctrine cases. *See* ROA.1725-27. In *West Virginia*, for example, the Supreme Court emphasized that the Clean Power Plan at issue would have "substantially restructure[d] the American energy market" and was estimated to "reduce GDP by at least a trillion 2009 dollars by 2040." 597 U.S. at 715, 724. Similarly, in *Nebraska*, the Supreme Court emphasized that the student-loan forgiveness plan at issue would have "canceled roughly $430 billion of federal student loan balances" and was estimated to "cost taxpayers between $469 billion and $519 billion." 600 U.S. at 483, 502 (quotation marks omitted).

Plaintiffs thus instead seek to invoke the major questions doctrine by relying on the incorrect assertion that the Department has claimed "unfettered discretion" to define and delimit the scope of the EAP

28

exemption however it wants.  Pl. Br. 30.  The Department has never
claimed such unfettered discretion; it has simply concluded that an
employee's salary level is a relevant consideration in determining which
employees are employed in a bona fide executive, administrative, or
professional capacity.  That determination is unremarkable for the reasons
already discussed, and this Court correctly upheld the Department's
conclusion in *Wirtz*, 364 F.2d at 608.

### C.   Plaintiffs' Nondelegation Argument Is Likewise Meritless

Finally, the district court correctly rejected plaintiffs' contention that
the Department's authority to define and delimit the terms of the EAP
exemption contravenes the nondelegation doctrine.  Other courts of appeals
to address the issue likewise have rejected that claim.  *See Walling*, 140
F.2d at 832 ("We think there can be no question that the power" to "define
and delimit" the EAP exemption "was lawfully delegated."); *Fanelli*, 141
F.2d at 218 ("In conferring such authority upon the Administrator" to
"define and delimit" the terms in the EAP exemption, "Congress acted in
accordance with a long established tradition (frequently sanctioned by the
Supreme Court), and did not unconstitutionally delegate powers vested in
the legislative branch.").

The nondelegation doctrine requires that Congress "lay down by legislative act an intelligible principle to which the person or body authorized [to exercise the delegated authority] is directed to conform." *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 472 (2001) (quotation marks omitted).  This standard is "not demanding."  *Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 442 (5th Cir. 2020) (quotation marks omitted), *cert. denied*, 141 S. Ct. 2746 (2021).  Rooted in "common sense and the inherent necessities of the government co-ordination," the requirement stems from the "practical understanding that in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives."  *Mistretta v. United States*, 488 U.S. 361, 372 (1989) (quotation marks omitted).

Even though Congress has delegated authority from "the beginning of the government," *United States v. Grimaud*, 220 U.S. 506, 517 (1911), the Supreme Court has "found the requisite 'intelligible principle' lacking in only two statutes"—both cases from 1935— "one of which provided literally no guidance for the exercise of discretion, and the other of which conferred authority to regulate the entire economy on the basis of no more precise a standard than stimulating the economy by assuring 'fair competition,'"

30

*American Trucking*, 531 U.S. at 474 (first citing *Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935); and then citing *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935)). By contrast, in the almost 90 years since those decisions issued, the Supreme Court has consistently upheld "Congress' ability to delegate power under broad standards," *Mistretta*, 488 U.S. at 373, and "ha[s] 'almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law,'" *American Trucking*, 531 U.S. at 474-75 (quoting *Mistretta*, 488 U.S. at 416 (Scalia, J., dissenting)).

To set forth a constitutionally permissible "intelligible principle," Congress need only "clearly delineate[] the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Mistretta*, 488 U.S. at 372-73 (quoting *American Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946)). The EAP exemption easily meets this standard. Congress expressly set forth the FLSA's statutory purpose of "eliminat[ing]" substandard "labor conditions" that are "detrimental" to the "health, efficiency, and general wellbeing of workers," 29 U.S.C. § 202(a), (b); Congress specified the FLSA's minimum wage and overtime pay requirements for workers, *id*. §§ 206, 207; and Congress chose to exempt from those protections workers "employed in a bona fide executive,

31

administrative, or professional capacity," while delegating to the Department the authority to "define[] and delimit[]" those terms by regulation, *id.* § 213(a)(1). Congress's delegation to the Department to "work out the details of" its statutory exemption for EAP employees, *see Coke*, 551 U.S. at 167, falls "unmistakably within" the range of delegations the Supreme Court has approved, *Fannelli*, 141 F.2d at 218 & n.4; *Walling*, 140 F.2d at 831-32 ("We think there can be no question that the power was lawfully delegated. . . . Congress has laid down a general standard and manifest a policy and within the framework thereof has delegated to the [Department] the duty to supply the details.").

Plaintiffs' contrary argument rests on the incorrect premise that if the Department has authority to consider an employee's salary level as a component of the criteria for the exemption, then the EAP exemption is an "empty vessel" and there is no "limiting principle" for how the Department may define and delimit the exemption. Pl. Br. 3 (quotation marks omitted); Pl. Br. 51-52. That premise is wrong for the reasons already explained. The Department has long found—and this Court has agreed—that salary level is relevant to whether a worker is employed in a bona fide executive, administrative, or professional capacity. *See Wirtz*, 364 F.2d at 608. But the Department could not, consistent with the statute, choose to tie the EAP

exemption to a criterion that lacks any reasonable relationship to the language of the exemption, *see Walling*, 140 F.2d at 831-32, or choose to "adopt a 'salary only' test," *see* 69 Fed. Reg. 22,122, 22,173 (Apr. 23, 2004). Nor could the Department, consistent with the FLSA's text and purpose, set a salary level that is so high as to "effectively 'define and delimit' the EAP Exemption out of existence," as plaintiffs speculate. Pl. Br. 31. Just as the text and purpose of the statute guide the Department's discretion in specifying the duties an employee must perform to be exempt, they guide the Department's discretion in setting a salary level.

## CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,

*Of Counsel:*

    SEEMA NANDA
    *Solicitor of Labor*

    JENNIFER S. BRAND
    *Associate Solicitor*

    RACHEL GOLDBERG
    *Counsel for Appellate Litigation*

    STEVEN W. GARDINER
    *Senior Attorney*

BRIAN M. BOYNTON
    *Principal Deputy Assistant*
    *Attorney General*

JAMIE ESPARZA
    *United States Attorney*

ALISA B. KLEIN

  *s/ Courtney L. Dixon*
COURTNEY L. DIXON
    *Attorneys, Appellate Staff*
    *Civil Division, Room 7246*
    *U.S. Department of Justice*
    *950 Pennsylvania Avenue NW*
    *Washington, DC 20530*
    *(202) 353-8189*
    *courtney.l.dixon@usdoj.gov*

March 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.

*s/ Courtney L. Dixon*
Courtney L. Dixon

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,099 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Georgia 14-point font, a proportionally spaced typeface.

*s/ Courtney L. Dixon*
Courtney L. Dixon