No. 23-50724

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

ROBERT MAYFIELD; R.U.M. ENTERPRISES, INCORPORATED,

Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT OF LABOR; MARTIN WALSH, SECRETARY, U.S. DEPARTMENT OF LABOR,

Defendants-Appellees.

On Appeal from the United States District Court
for the Western District of Texas

## SUPPLEMENTAL BRIEF FOR APPELLEES

*Of Counsel:*

SEEMA NANDA
*Solicitor of Labor*

JENNIFER S. BRAND
*Associate Solicitor*

RACHEL GOLDBERG
*Counsel for Appellate Litigation*

STEVEN W. GARDINER
*Senior Attorney*

BRIAN M. BOYNTON
  *Principal Deputy Assistant
  Attorney General*

JAMIE ESPARZA
  *United States Attorney*

ALISA B. KLEIN
COURTNEY L. DIXON
  *Attorneys, Appellate Staff
  Civil Division, Room 7243
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 353-8189*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

ARGUMENT ....................................................................................................... 2

CONCLUSION ..................................................................................................10

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                                                              **Page(s)**

*Big Time Vapes, Inc. v. FDA*,
  963 F.3d 436 (5th Cir. 2020), *cert. denied*,
  141 S. Ct. 2746 (2021) ............................................................................... 8

*CBOCS West, Inc. v. Humphries*,
  553 U.S. 442 (2008) ................................................................................... 8

*Fanelli v. U.S. Gypsum Co.*,
  141 F.2d 216 & n.4 (2d Cir. 1944) ........................................................ 9

*Long Island Care at Home, Ltd. v. Coke*,
  551 U.S. 158 (2007) ........................................................................ 3-4, 4, 9

*Loper Bright Enterprises v. Raimondo*,
  144 S. Ct. 2244 (2024) ........................................ 1, 2, 2-3, 3, 4, 6, 8, 9

*Nevada v. U.S. Dep't of Labor*,
  275 F. Supp. 3d 795 (E.D. Tex. 2017) ................................................... 7

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944) .................................................................................. 6

*Walling v. Yeakley*,
  140 F.2d 830 (10th Cir. 1944) ................................................................ 9

*Wayman v. Southard*,
  10 Wheat. 1 (1825) ................................................................................... 9

*Wirtz v. Mississippi Publishers Corp.*,
  364 F.2d 603 (5th Cir. 1966) ............................................................. 2, 7

**Statutes:**

29 U.S.C. § 213(a)(1) ................................................................................. 2, 4

29 U.S.C. § 213(a)(15) ................................................................................. 3

**Other Authorities:**

3 Fed. Reg. 2518 (Oct. 20, 1938) ........................................................................ 6

5 Fed. Reg. 4077 (Oct. 15, 1940) ........................................................................ 6

14 Fed. Reg. 7705 (Dec. 24, 1949) ...................................................................... 6

23 Fed. Reg. 8962 (Nov. 18, 1958) ................................................................... 6-7

28 Fed. Reg. 9505 (Aug. 30, 1963) ..................................................................... 7

35 Fed. Reg. 883 (Jan. 22, 1970) ........................................................................ 7

40 Fed. Reg. 7091 (Feb. 19, 1975) ...................................................................... 7

69 Fed. Reg. 22,122 (Apr. 23, 2004) ................................................................... 7

81 Fed. Reg. 32,391 (May 23, 2016) ................................................................... 7

84 Fed. Reg. 51,230 (Sept. 27, 2019) .............................................................. 5, 7

## INTRODUCTION

The government respectfully submits this supplemental brief to address the effect of *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), on this case. In short, *Loper Bright* confirms that the judgment of the district court should be affirmed.

*Loper Bright* held that statutory ambiguity is not an *implicit* delegation to an agency; however, the Supreme Court recognized that statutes may "expressly delegate[]" discretionary authority to an agency to define statutory terms. 144 S. Ct. at 2263 (quotation marks omitted; alteration in original). As an example of such an express delegation, the Supreme Court cited a Fair Labor Standards Act (FLSA) exemption that is materially identical to the FLSA exemption at issue here. *See id*. at 2263 n.5. Furthermore, the Court explained that even in the absence of such an express delegation, respect for the agency's interpretation is "especially warranted when" it "was issued roughly contemporaneously with enactment of the statute and remained consistent over time." *Id*. at 2258.

*Loper Bright* therefore further undermines plaintiffs' contention that the Department of Labor lacks statutory authority to use a salary-level test in combination with a duties test to identify those workers that fall within the FLSA's exemption for workers "employed in a bona fide executive,

administrative, or professional capacity . . . (as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor] . . .)." 29 U.S.C. § 213(a)(1). That statutory language "expressly" delegates discretionary authority to the Department to define and delimit the EAP exemption's terms, and for the reasons explained in the government's brief, the Department has acted well within the "outer statutory boundaries" of that express delegation. 144 S. Ct. at 2263, 2268. Indeed, the Department has used a salary-level test as one component of its criteria for the exemption since the FLSA's enactment in 1938, and employers and employees alike have widely supported the Department's longstanding approach. *Loper Bright* thus vindicates this Court's decision in *Wirtz v. Mississippi Publishers Corp.*, 364 F.2d 603 (5th Cir. 1966), which recognized the Department's authority to use a salary-level test.

## ARGUMENT

**A.** As the government's brief explained, the Supreme Court's decision in *Chevron* rested on the presumption that silence or ambiguity in a statute should be regarded as an implicit delegation of authority to an agency. Br. 19 & n.3; *see Loper Bright*, 144 S. Ct. at 2264-65. In overruling *Chevron*, the Supreme Court rejected the presumption "that statutory ambiguities are *implicit* delegations to agencies." 144 S. Ct. at 2265

2

(emphasis added). Describing that presumption as a "fiction," *Loper Bright* explained that courts should not "pretend that ambiguities are necessarily delegations." *Id.* at 2268.

*Loper Bright* recognized, however, that Congress "often" has "confer[red] discretionary authority on agencies." 144 S. Ct. at 2268; *see also id.* at 2263. The Court explained that "Congress may do so, subject to constitutional limits." *Id.* at 2268. And the Court stressed that to "stay out of discretionary policymaking left to the political branches," judges should "independently identify and respect such delegations of authority, police the outer statutory boundaries of those delegations, and ensure that agencies exercise their discretion consistent with the APA." *Id.*

To illustrate an example of a statute in which Congress has "expressly delegate[d]" authority to an agency, *see Loper Bright*, 144 S. Ct. at 2263 (quotation marks omitted), the Supreme Court cited a FLSA exemption that applies to "any employee employed . . . in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (*as such terms are defined and delimited by regulations of the Secretary*)." 29 U.S.C. § 213(a)(15) (emphasis added); *see Loper Bright*, 144 S. Ct. at 2263 n.5. That same exemption was at issue in *Long Island Care at Home, Ltd. v. Coke*, 551 U.S.

3

158 (2007). As the government's brief explains (Br. 15-16), the Supreme Court in *Coke* recognized that, in directing the Secretary to "define[] and delimit[]" that exemption's terms, Congress had "explicitly" left "gaps" as to "the scope and definition" of the exemption's terms, and expressly granted the Department the authority "to work out the details" based on its expertise and consultation with stakeholders. *See* 551U.S. at 162, 165, 167-68. Those "details," moreover, were not limited to expounding upon only the job duties of a domestic worker employed to provide companionship services—but rather included questions such as whether or not the exemption should apply to companionship workers "paid by third parties." *See id*. at 167-68.

**B. 1.** Similar to the FLSA exemption cited in *Loper Bright*, the provision at issue here expressly delegates authority to the Department to "define[] and delimit[]" the terms of the exemption for workers "employed in a bona fide executive, administrative, or professional capacity." *See* 29 U.S.C. § 213(a)(1). As explained in the government's brief, this Court must therefore uphold the Department's approach so long as it acted within "the outer statutory boundaries" of Congress's express delegation. *See Loper Bright*, 144 S. Ct. at 2268; *see also* Gov't Br. 18-19.

The Department did so. Plaintiffs cannot seriously contend that the Department's longstanding approach is foreclosed by the statutory text. To the contrary, as the government's brief established, the Department's approach flows naturally from the very dictionary definitions upon which plaintiffs rely. *See* Gov't Br. 19-21. From the FLSA's inception, the Department found "wide agreement" amongst employers and employees alike that the statutory language of the EAP exemption "implies a status" not attained by low-wage workers. ROA.1469, 1483 (1940 Stein Report 5, 19); *see also, e.g.*, ROA.1564 (1958 Kantor Report 2) ("The terms bona fide executive, administrative and professional imply a certain prestige, status and importance."). A salary-level test is "a valuable and easily applied index to the 'bona fide' character of the employment for which exemption is claimed," and helps to ensure that the EAP exemption does not "invite evasion" of the FLSA's minimum wage and overtime requirements "for large numbers of workers to whom the wage-and-hour provisions should apply." ROA.1469, 1483 (Stein Report 5, 19); *see* Gov't Br. 16-17, 20-21.

Employees and employers have continued to support the Department's combined approach of considering salary level alongside an employee's job duties. Gov't Br. 17; *see, e.g.*, 84 Fed. Reg. 51,230, 52,239 (Sept. 27, 2019) (noting commenters on the 2019 rule "overwhelmingly

5

agreed the salary level should be increased" from the then-current level). And Congress has repeatedly ratified the Department's approach in amending the FLSA. *See* Br. 21-25.

**2.** Further underscoring the Department's statutory authority to use a salary-level test as one component of the criteria for the exemption, *Loper Bright* reaffirms that even when—unlike here—a statute does *not* expressly delegate authority to the agency, the "interpretations of those responsible for implementing" a particular statute "'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance' consistent with the APA." 144 S. Ct. at 2262 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Such respect for the agency's interpretation is "especially warranted when" it "was issued roughly contemporaneously with enactment of the statute and remained consistent over time." *Id.* at 2258; *see also id.* at 2262.

Here, as discussed, the Department has used a salary-level test as a component of the EAP regulations since the FLSA's enactment in 1938. *See* 3 Fed. Reg. 2518 (Oct. 20, 1938). And although the specific minimum salary level has changed over time, every administration has established or carried forward a salary-level test in some form. *See* 5 Fed. Reg. 4077 (Oct. 15, 1940); 14 Fed. Reg. 7705 (Dec. 24, 1949); 23 Fed. Reg. 8962 (Nov. 18,

1958); 28 Fed. Reg. 9505 (Aug. 30, 1963); 35 Fed. Reg. 883 (Jan. 22, 1970); 40 Fed. Reg. 7091 (Feb. 19, 1975); 69 Fed. Reg. 22,122 (Apr. 23, 2004); 81 Fed. Reg. 32,391 (May 23, 2016); 84 Fed. Reg. at 51,230. It is plaintiffs who are outliers in insisting that the terms of the EAP exemption "have no connection to how much an employee is paid." Opening Br. 18.

**3.** *Loper Bright* therefore vindicates this Court's decision in *Wirtz v. Mississippi Publishers Co.*, 364 F.2d 603, which, as plaintiffs recognize, predates the Supreme Court's *Chevron* decision. *See* Reply Br. 5-6. This Court recognized in *Wirtz* that the text of the EAP exemption "gives the Secretary broad latitude to 'define and delimit' the meaning of the term 'bona fide executive . . . capacity,'" and rejected the argument that a salary-level test is "not rationally related to the determination of whether an employee is employed in a 'bona fide executive . . . capacity.'" *See Wirtz*, 364 F.2d at 608. As explained in the district court case upon which plaintiffs rely, "*Wirtz* is controlling and stands for the proposition that the Department has the authority to implement a salary-level test." *Nevada v. U.S. Dep't of Labor*, 275 F. Supp. 3d 795, 805 n.5 (E.D. Tex. 2017).

In all events, even if there were any doubt as to whether *Wirtz* relied on agency-deference principles that *Loper Bright* overruled, the Supreme Court explicitly stated in its decision that it was "not call[ing] into question

7

prior cases that relied on the *Chevron* framework," and that such prior cases "are still subject to statutory *stare decisis* despite our change in interpretive methodology." 144 S. Ct. at 2273; *see also CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008) (recognizing that *stare decisis* principles "demand respect for precedent whether judicial methods of interpretation change or stay the same"). The Supreme Court's admonition that courts should adhere to the principle of statutory *stare decisis* has particular force here, where every court of appeals to have considered the question has agreed that the Department has statutory authority to use a salary-level test, *see* Gov't Br. 14, and where Congress has ratified the agency's longstanding interpretation through a series of provisions enacted against the backdrop of such uniform precedent, *see* Gov't Br. 21-24.

**C.** Finally, *Loper Bright* casts no doubt on the district court's conclusion that the statute does not contravene the nondelegation doctrine. As the government's brief explains (Br. 29-33), Congress's delegation easily satisfies the requirement that Congress provide an intelligible principle for the agency to follow, a standard that is "not demanding." *Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 442 (5th Cir. 2020) (quotation marks omitted), *cert. denied*, 141 S. Ct. 2746 (2021). Indeed, *Loper Bright* reaffirms that Congress can "empower an agency to prescribe rules to 'fill up the details' of

a statutory scheme." 144 S. Ct. at 2263 (quoting *Wayman v. Southard*, 10 Wheat. 1, 43 (1825)).  Courts of appeals have uniformly concluded that Congress's delegation to the Department to "work out the details" of the statutory EAP exemption, *see Coke*, 551 U.S. at 167, falls "unmistakably within" the range of delegations the Supreme Court has approved, *see Fanelli v. U.S. Gypsum Co.*, 141 F.2d 216, 218 & n.4 (2d Cir. 1944); *Walling v. Yeakley*, 140 F.2d 830, 831-32 (10th Cir. 1944) ("We think there can be no question that the power was lawfully delegated. . . . Congress has laid down a general standard and manifest a policy and within the framework thereof has delegated to the [Department] the duty to supply the details.").

# CONCLUSION

For the reasons stated above, and in the government's response brief, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

*Of Counsel:*

SEEMA NANDA
*Solicitor of Labor*

JAMIE ESPARZA
*United States Attorney*

JENNIFER S. BRAND
*Associate Solicitor*

ALISA B. KLEIN
 s/ Courtney L. Dixon
COURTNEY L. DIXON
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7246*
 *U.S. Department of Justice*
 *950 Pennsylvania Avenue NW*
 *Washington, DC 20530*
 *(202) 353-8189*
 *courtney.l.dixon@usdoj.gov*

RACHEL GOLDBERG
*Counsel for Appellate Litigation*

STEVEN W. GARDINER
*Senior Attorney*

July 2024

# CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.

 *s/ Courtney L. Dixon*
Courtney L. Dixon

**CERTIFICATE OF COMPLIANCE**

This brief complies with this Court's July 1, 2024 supplemental briefing order because it does not exceed ten pages. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Georgia 14-point font, a proportionally spaced typeface.

*s/ Courtney L. Dixon*
Courtney L. Dixon
