

July 15, 2024

VIA ELECTRONIC FILING
Mr. Lyle W. Cayce
Clerk of Court
U.S. Court of Appeals for the Fifth Circuit
600 S. Maestri Place
New Orleans, LA 70130

**Re:** *Supplemental Letter Brief, Mayfield, et al. v. Department of Lab., et al.*, No. 23-50724.

Dear Mr. Cayce:

Pursuant to this Court's July 1 order, Dkt. # 75, the Appellants submit this letter brief to address the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). *Loper Bright* was a momentous decision because it ended a forty-year experiment in allowing agencies to determine the extent of their own statutory authority. Because *Loper Bright* holds that federal agencies are entitled to no deference when interpreting the scope of their delegated authority, this Court must exhaust the judicial toolkit—applying all the canons of construction, as well as clear statement rules as aids—to determine the scope of Secretary of Labor's "define and delimit" authority under 29 U.S.C. § 213(a)(1) ("EAP Exemption"). *Loper Bright*, 144 S. Ct. at 2266 ("[C]ourts use every tool at their disposal.").

As already explained in Appellants' merits briefing, the best interpretation of the operative text is that the Secretary is limited to promulgating rules clarifying the duties that an employee must perform to qualify as an exempt "executive, administrative, or professional" employee. Opening Br. at 15–40. The Secretary's "define and delimit" power does not entail authority to condition the EAP Exemption on minimum salary requirements. In short, *Loper Bright* is the death knell of the Department's claim to an ungoverned power to impose and raise minimum salary rules as high as the Secretary deems fit.

**The Department of Labor Is Not Authorized to Establish Minimum Salary-Level Rules for the EAP Exemption under the *Loper Bright* Framework**

A. The *Loper Bright* Framework

1. The Constitution and the APA Require *De Novo* Review of All Questions of Law—Regardless of Entrenched Agency Interpretations

In *Loper Bright,* the Supreme Court overturned the doctrine, established in *Chevron USA Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), that lower courts must defer to "permissible" agency interpretations of ambiguous text in statutes they administer. *Loper Bright*, 144 S. Ct. at 2273 (emphasizing that courts must "exercise their independent judgment in deciding whether an agency has acted within its statutory authority."). In overturning *Chevron*, the Court held that, under the Constitution and the Administrative Procedure Act, it is the duty of courts, not agencies, to say what the law is. *Id*. And as such, "[i]t [] makes no sense to speak of a 'permissible' interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best." *Id*. at 2266.

*Loper Bright* accordingly held that *Chevron* deference "cannot be squared with the APA." *Id*. at 2263. The APA's text, "codifies for agency cases the unremarkable, yet elemental proposition reflected by judicial practice dating back to *Marbury*: that courts decide legal questions by applying their own judgment." *Id*. at 2261. The statute thus "specifies that courts, not agencies, will decide '*all* relevant questions of law' arising on review of agency action, [5 U.S.C] § 706—even those involving ambiguous laws—and set aside any such action inconsistent with the law as they interpret it." *Id*. (emphasis in original). Under the APA, courts should therefore, from the start, engage in *de novo* review—using the "traditional tools of statutory construction"—to "resolve statutory ambiguities." *Id*. at 2266.

More to the point, deference to an agency's interpretation is inimical to separation of powers because it has always been the exclusive

purview of the judiciary to say what the law is. *Id.* at 2257 ("It is emphatically the province and duty of the judicial department to say what the law is.") (quoting *Marbury v. Madison*, 1 Cranch 137, 177 (1803)). *Loper Bright* makes this point clearly in laying out the pre-*Chevron* history—all of which confirms that the Framers understood that it would be the role of the courts (not the President or his subordinate officers) to give a definite interpretation to ambiguous statutory text. *Id.* at 2257–58. And *Loper Bright* emphasized that the courts had long exercised that power without giving deference to the Executive Branch. *Id.* at 2257–61.

And while *Loper Bright* recognizes that an agency's view of its delegated authority may "inform" a court's view, the agency's views are just that: views. *Id.* at 2258 ("The views of the Executive Branch could inform the judgment of the judiciary, but it did not supersede it."). The agency's interpretation has weight only to the extent that it represents a persuasive interpretation of the statute. *Id.* at 2259 ("The weight of such a judgment . . . depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning . . . and all those factors which give it the power to persuade . . . .") (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)). "As Justice Story put it, 'in cases where [a court's] own judgment . . . differ[ed] from that of other high functionaries,' the court was 'not at liberty to surrender, or to waive it.'" *Id.* at 2258 (quoting *U.S. v. Dickson*, 40 U.S. 141 (1841)). Thus, even as the court might afford respect to an agency's long-standing interpretation, the court must reject that interpretation if it is not the "best reading." *Id.* at 2266.

### 2. Courts Must Interpret Express Delegations as They Would any Other Provision to Determine the Best Reading of the Statute as a Whole

*Loper Bright* recognized that Congress sometimes "expressly delegate[s]" "a *degree* of discretion" for an agency to "give meaning to a particular statutory term." *Id.* at 2263 (emphasis added). But courts are tasked with determining the scope of a delegation by looking to the statute as a whole—and using all the same tools of construction they use when confronting any other question of statutory interpretation. *Id.* at 2266 ("In an agency case as in any other . . ." courts must give ambiguous

text the "best reading" just as it must "if no agency were involved."). For example, *Loper Bright* recognized that the Clean Air Act delegated authority for the Environmental Protection Agency to regulate power plants, but only "if the Administrator finds such regulation is appropriate and necessary." *Id.* at 2263, n.6 (citing *Michigan v. EPA*, 576 U.S. 743 (2015)). And it is the prerogative of the judiciary to decide the "boundaries of [the] delegated authority." *Id.* at 2263. *See Michigan*, 576 U.S. at 752 (finding the "necessary and appropriate" language required EPA to consider costs to private parties).

*Loper Bright* recognized what has always been true: Courts must decide on the "best" meaning of the operative text—which means the Court must decide, on its own accord, whether an agency is reaching *beyond the bounds* of its delegated authority. *Id.* at 2266 (emphasizing that the bounds of delegated authority are established in the statutory text, which has a "fixed" and discernable meaning) (quoting *Wisconsin Central Ltd. v. United States*, 585 U.S. 274, 284 (2018)). Therefore, even when confronting an express delegation, this Court has a duty to discern the best reading of the statute, as a whole, to determine the "boundaries" of the agency's delegated authority—and to "ensur[e] that the agency acts within" those bounds.[1] *See id.* at 2273. *See also id.* at 2266 (stressing that federal agencies "have no special competence in resolving statutory

---

[1] After *Loper Bright,* the appropriate analysis of a salary-level rule must comport with the Court's objective understanding of the FLSA as a whole. Indeed, the Eastern District of Texas recently explained, when temporarily enjoining the Department's 2024 salary-level rule, as to the State of Texas, that a salary-level rule (if permissible at all) could not raise required salaries so high as to "effectively displace[] the only EAP Exemption test authorized by the statutory text, i.e., the duties test[.]" *Texas v. United States Department of Labor*, 2024 WL 3240618 at *9 (E.D. Tex. June 28, 2024); *see also id.* at *11 (concluding the 2024 Rule is not a "permissible construction of Section 213(a)(1)" because "the salary level thresholds" would "'effectively eliminate' consideration of whether an employee performs 'bona fide executive, administrative, or professional capacity' duties in favor of what amounts to a salary-only test.")

ambiguities.").[2] This hardnosed approach to statutory construction is vital *especially* when the case concerns a controversy over the scope of the agency's power.

The whole point of *Loper Bright* is that agencies *do not* receive deference when the scope of their delegated authority is disputed:

> The very point of the traditional tools of statutory construction—the tools courts use every day—is to resolve statutory ambiguities. That is no less true when the ambiguity is about the scope of an agency's own power—perhaps the occasion on which abdication in favor of the agency is *least appropriate*.

*Id.* at 2266.

As such, courts must decide on the "best meaning" of all statutory text—including ambiguous provisions that expressly delegate a degree of rulemaking discretion. *Id.* at 2266. And with this essential precept in mind, it only makes sense that in each example that the Court offered of "express[] delega[tions]," there were clear textual limitations confining the agency to a narrow range of options. *Id.* at 2263. In each example, the agency's rulemaking discretion was circumscribed by the text and the overall statutory structure. Not one of the examples would allow for open-ended rulemaking authority of the sort the Department claims here. *See id.* at 2269 (emphasizing that "[e]xtraordinary grants of regulatory authority are rarely accomplished through 'modest words,' 'vague terms,' or 'subtle device[s]'" (quoting *West Virginia v. EPA*, 597 U.S. 697, 723 (2022)). *See* Opening Br. at 34–35 (arguing that "one would expect Congress to have provided [] parameters and direction if it intended to authorize minimum salary rules . . . .").

Of relevance here, the Court pointed to the FLSA's domestic service

---

[2] To the extent there is any ambiguity in Section 213(a)(1), it is not even a "technical matter" for which the Department's expertise might shed meaningful light. *Id.* at 2267. And even if it was, *Loper Bright* says: "[I]t does not follow that Congress has taken the power to authoritatively interpret the statute from the courts and given it to the agency." *Id.* "Congress expects courts to handle technical statutory questions." *Id.*

exemption under 29 U.S.C. § 213(a)(15). *Loper Bright,* 144 S. Ct. at 2263, n.5. Under that provision the Secretary has been delegated authority to "define and delimit" what it means to be "employed on a casual basis in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves . . . ." 29 U.S.C. § 213(a)(15). This text plainly limits the Secretary to deciding such matters as to what sort of work constitutes "companionship services" and what counts as "domestic service employment." *Id.* It is no license for the Secretary to impose regulation that has no textual grounding, or that is inimical to a cohesive understanding of the statute as a whole. *Loper Bright,* 144 S. Ct. at 2266 (emphasizing courts must decide on the "best reading" of the statute—regardless of whether "an agency [is] involved"). For example, if the Secretary were to promulgate a regulation conditioning the domestic service exemption on a requirement that the employee must receive paid sick leave, the courts would be duty-bound to hold that the Secretary was reaching beyond his delegated authority because the concept of paid sick leave is alien to the operative text of the domestic service exemption. *See id.* at 2273 ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory bounds . . . .").

In sum, *Loper Bright* represents a sea change in the way courts approach questions as to the scope of delegated rulemaking authority. Boiled down, *Loper Bright* requires reviewing courts to engage in *de novo* review to decide: (1) whether there is a delegation of discretionary authority to an agency; (2) the scope of any delegated authority; and (3) whether the agency is acting within the bounds of its delegated authority. The agency is entitled to **no deference** on any of these matters. *Id.*

**B. Salary-Level Rules Are Not "Within the Boundaries" of the FLSA's "Express Delegation" to "Define and Delimit" the EAP Exemption**

Under *Loper Bright*'s non-deferential framework, this Court should reverse the District Court and hold that the Fair Labor Standards Act *does not* authorize the Secretary or Department of Labor to establish a salary-level requirement under the EAP Exemption. 29 U.S.C. § 213(a)(1). *Loper Bright* affirms the ultimate point of this lawsuit: The

scope of the Secretary's "define and delimit" authority is cabined by the objective meaning of the exemption's operative terms—which only authorizes rulemaking discretion to determine what duties trigger the EAP exemption. This straightforward conclusion is confirmed by the statute's text, structure, and background principles of statutory construction—all of which *Loper Bright* requires this Court to consider in deciding the boundaries of the Secretary's delegated authority.

Here, Congress has "expressly delegated" a certain degree of rulemaking authority in authorizing the Secretary to "define and delimit" the terms "bona fide executive, administrative and professional capacity." 29 U.S.C. § 213(a)(1). But the question is whether the authority to "define and delimit" those terms entails an authority to impose extratextual minimum salary rules, or whether the Department has exceeded the bounds of its delegated authority in promulgating salary level rules. *Loper Bright*, 144 S. Ct. at 2273. And as already explained, questions as to the scope of expressly delegated authority are reviewed *de novo*—without deference to the Department.

Thus, just because the Department has long interpreted Section 213(a)(1) as authorizing salary level rules, this is only one consideration among many. That interpretation is entitled "respect," but only to the extent that it is ultimately persuasive. *See id.* at 2265 (citing *Skidmore*, 323 U.S. 134, 139–40). And as the Appellants have made clear in their merits briefing already, the Department's self-aggrandizing view of its "define and delimit" authority is *not* persuasive. Opening Br. at 15–40.

This is because the Department's expansive view of its "define and delimit" authority has no basis in the text or structure of the Act, nor can it be squared with the major questions doctrine or other traditional canons of construction. *Id.* All these indicia of statutory meaning point in the same direction: Congress only authorized the Department to determine what duties an employee must perform to be "employed in a bona fide executive, administrative, or professional capacity." *Id.* at 15–25. And the Department is reaching beyond the "boundaries" of its delegated authority when promulgating minimum salary rules that are alien to the operative text—as understood after applying all the traditional tools of construction. *Loper Bright*, 144 S. Ct. at 2263. *See also supra* at 2266 (stressing the canons of construction always point to an

objective meaning for any statutory delegation, and warning that it is *improper* to defer to an agency's self-aggrandizing view of its powers).

Of course, the District Court was correct in observing that "[t]he parties agree the statute does not explicitly confer or prohibit any 'salary level rulemaking power.'" ROA.956. But now that *Loper Bright* has renounced *Chevron*, there is no longer any basis for presuming statutory authority from statutory silence—or for deferring *in any manner* to the Department's views. Opening Br. at 14 (citing ROA.957–958). It is now beyond cavil that this Court must decide for itself the scope of the Secretary's rulemaking authority—without allowing the Department to put its thumb on the interpretive scale. *Loper Bright*, 144 S. Ct. at 2273.

For its part, the Department has defended its supposed minimum salary rulemaking authority without invoking *Chevron* through the course of this appeal. Likely because the Department recognized that the Supreme Court was poised to overturn *Chevron*, the Department has argued, instead, that this Court should afford deference under an arbitrary and capricious standard.[3] But that approach would contravene *Loper Bright*'s directive that this Court must decide on the "best" meaning of the statute as a whole in determining the "boundaries" of an agency's delegated authority. *Id.* at 2266, 2268. After all, *Loper Bright* unequivocally rejects any approach that "mechanically afford[s] *binding* deference to agency interpretations . . . ." because that is "the antithesis of the time honored approach the APA [and the Constitution] prescribes." *Id.* at 2265.

*Loper Bright* thus forecloses the Department's argument that when "'Congress has explicitly left a gap for the agency to fill,' the agency's implementing regulations must be upheld 'unless they are arbitrary, capricious, or manifestly contrary to the statute.'" Appellee Br. at 15 (quoting *Easom v. US Well Servs., Inc.*, 37 F.4th 238, 245 (5th Cir. 2022)). *Loper Bright* makes plain that a reviewing court must first independently review, with no deference, the scope of an express delegation before determining whether an agency action is lawful. *Loper Bright*, 144 S. Ct. at 2267–68 ("The view that interpretation of ambiguous statutory provisions amounts to policymaking suited for political actors rather

---

[3] The Department does not even cite *Chevron*. *See* Reply Br. at 2.

than courts is especially mistaken[.]"). This Court simply cannot skip past the question of what authority Congress has delegated. *See id.* at 2269 ("[T]he question that matters" is whether "the statute authorize[s] the challenged agency action?").

Simply put, the Department only gets to exercise its policy discretion when it is clearly operating within the bounds of its delegated authority. But because an objective interpretation of the operative text limits the Department to promulgating regulations concerning the duties an employee must perform to be treated as exempt, the Department simply has no business regulating salaries. And after *Loper Bright*, that is the end of the inquiry. *Id.* at 2273.

### C. The Department's View of Its Power to "Define and Delimit" the EAP Exemption is Inconsistent with "Constitutional Limits"

Finally, *Loper Bright* affirms that to the extent there is an express delegation of rulemaking authority, the reviewing court still must ensure the delegation complies with "constitutional limits"—including the nondelegation doctrine. *Id.* at 2268. The *Loper Bright* majority stressed this point *three* separate times. *See id.* at 2263, 2273. And, indeed, there is great reason for concern because when Congress expressly delegates authority for an agency to exercise policy discretion in deciding the meaning of critical statutory text, it is hard to reconcile that delegation with the bedrock doctrine that Congress must establish an intelligible governing standard. *See Panama Refining Co. v. Ryan*, 293 U.S. 388, 430 (1935) (finding a nondelegation violation because Congress had failed to "declare[] [a] policy, [] establish[] a standard, [or] la[y] down [a] rule.").

Likewise, Justice Thomas' concurring opinion warns that delegations authorizing agencies to exercise a free hand in weighing competing policy priorities implicates the nondelegation doctrine. *Loper Bright*, 144 S. Ct. at 2275 (Thomas, J., concurring) (explaining that deference to an agency's "'formulation of policy' . . . would mean that 'agencies are unconstitutionally exercising 'legislative powers' vested in Congress.'") Accordingly, between the majority opinion and Justice Thomas' concurrence, there is all the greater reason for this Court to take the nondelegation doctrine seriously. *Loper Bright* signals that this Court

should take the nondelegation doctrine into account as a background principle to inform the proper interpretation of the Secretary's "define and delimit" authority. *Id.* at 2263, 2268, 2273. And if the Court believes it is bound by a prior panel decision to conclude that the Secretary has been delegated authority to impose minimum salary rules, *Loper Bright* requires this Court to seriously question whether there is a governing intelligible principle because that is the constitutional backstop. Opening Br. at 48–66.

Here the Department views the "define and delimit" delegation as an unbounded power to establish whatever rules it thinks would further the FLSA's purposes—so long as those rules are not arbitrary and capricious. Appellees Br. at 33. Because that interpretation comes dangerously close to (or violates) separation of powers, it must be rejected. *See* Opening Br. at 25. Otherwise, the power to "define and delimit" is an unconstitutional delegation of legislative power. *See* Reply Br. at 26–31.

For all these reasons, this Court should reverse the District Court.

Sincerely,

/s/ Luke A. Wake
LUKE A. WAKE
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Email: LWake@pacificlegal.org

FRANK D. GARRISON
Pacific Legal Foundation
3100 Clarendon Blvd.,
Suite 1000
Arlington, VA 22201
Telephone: (916) 419-7111
Email: FGarrison@pacificlegal.org

*Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2024, I electronically filed the foregoing Letter Brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Luke A. Wake
LUKE A. WAKE
*Counsel for Plaintiffs-Appellants*
